CYRIL OLIAN, a Minor, by LESLIE OLIAN, his Father and Natural Guardian, v. LOUIS G. OLIAN and BESSIE OLIAN, Appellants.—59 S. W. (2d) 673.

Division One, April 20, 1933.

*Leahy, Saunders & Walther* and *William O'Herin* for appellants.

*Foristel, Mudd, Blair & Habenicht* for respondent.

STURGIS, C.—The plaintiff, a minor, received severe personal injuries by reason of falling backward while at play from the back porch of the third story of a three-story apartment building in which he lived with his parents. The wire screen of such porch gave way when plaintiff leaned against it and he fell some ten feet to the cement pavement below, fracturing his skull. This suit is for damages against the owners of the building for their negligence in permitting the premises to be in a defective and dangerous condition. The plaintiff is a nephew of the defendant Louis G. Olian, his father, who brings this suit as natural guardian, being such defendant's brother.

The defendants appeared and filed a general denial and no question arises on the pleadings. The jury returned a verdict for plaintiff for $8,500 and defendants appealed.

The evidence shows without contradiction that defendants owned the apartment building in question and rented the various apartments to tenants, one of whom was plaintiff's father. The back porch from which plaintiff fell to his injury was used in common by the two families occupying the upper apartments as a means of ingress and egress to and from the same. The duty of keeping this porch in repair and in safe condition for use was on the defendants. There is no question but that the back screen of this porch which was fastened to a railing and upright posts was allowed to become loose and insecure, of which defendants had notice and had promised to repair same. The plaintiff, a boy thirteen years of age, while at play on this porch, leaned against this insecurely fastened screen, which gave way, and he fell to his injury. Defendants practically admit liability. The only controverted point was the extent of plaintiff's injuries.

The only errors assigned in this court are (1) the court permitted plaintiff to prove by his parents as witnesses that defendant Louis Olian was covered by liability insurance; (2) the verdict is excessive; (3) the giving of an instruction on the measure of damages naming $25,000 as the maximum amount to be allowed. The second assignment of error is apparently a corollary of the other two.

The question of injecting into a jury trial for damages the fact that one or more of the defendants holds liability insurance protecting him in the payment of damages, and that part or all of the attorneys in the defense of the case are employed by and in fact representing the defendant at the instance of the insurance company, is by no means a' new one in this State. That this question only arises in jury trials and generally in damage suits is historically correct, and the reason is obvious. Of late years, due partly at least to the growth of that kind of insurance, the question arises frequently in this and other courts. It would seem that enough has been written to fairly settle all the ordinary questions of law on this subject, but when it comes to applying the law to a *working basis,* many difficulties arise.

We think it should be taken as settled in this State that when it comes to qualifying and selecting a jury to try a case, the plaintiff has a right to ascertain in a proper manner whether or not an insurance company, by reason of its interest in the result, is actively conducting or assisting in the defense of the suit, and, if so, to properly question the jurors as to their relationship to or interest in the defending company. To this end the plaintiff should be given a reasonably wide latitude in making inquiry and having the jurors answer on oath. [Smith v. Lammert (Mo.), 41 S. W. (2d) 791; Joyce v. Biring (Mo. App.), 43 S. W. (2d) 845, 847; Smith v. Star Cab Co., 323 Mo. 44, 19 S. W. (2d) 467; Pinter v. Wilson (Mo.), 46 S. W. (2d) 548; Decker v. Liberty (Mo.), 39 S. W. (2d) 546.]

In Pinter v. Wilson, supra, this court said: ''In view of recent decisions of this court, there can be no doubt that plaintiff was entitled to inquire of the jurors whether or not any of them were employed by said association, which admittedly was interested in the result of the trial, and that the court's refusal to permit such inquiry was reversible error.'' See the numerous cases there cited.

In Maurizi v. Western Coal & Mining Co. (Mo.), 321 Mo. 378, 11 S. W. (2d) 268, 274, the reason of the rule is said to be: ''The foundation is the right of a litigant to know the relation of the members of the panel to the parties and those interested in the result of the case. . . . On the other hand, if it should appear from the record that counsel has abused the privilege, and the inquiries were not for the purpose of being able to intelligently make peremptory challenges, the action of the court in permitting the inquiries would not be sustained. The court should require counsel

for plaintiff to inquire of defendant's counsel, out of hearing of the jury, whether or not the insurance company is interested in the case, and, if so, the name of the company."

Methods which may properly be used in ascertaining what, if any, insurance company is interested in the defense of the case is pointed out in Boten v. Ice Co., 180 Mo. App. 96, 166 S. W. 883, and Hill v. Jackson (Mo. App.), 272 S. W. 105, 107. But even on the *voir dire* examination to qualify jurors, attorneys should be required to act in good faith in not unnecessarily mentioning the question of insurance. It is the common experience of practicing attorneys that it is highly prejudicial to a defendant's case for the jury to be informed that any verdict returned against the defendant will not hurt him but will be paid by an insurance company. Attorneys trying damage suits for plaintiffs know well the advantage to be gained by getting such fact before the jury and are only too prone to seek such advantage.

In the present case plaintiff was accorded the right to question the jurors on the *voir dire* examination as to any connection with the Union Indemnity Company of New Orleans. No such connection was shown and no juror was disqualified. There was seemingly no reason for mentioning the question of insurance or the name of any insurance company. However, no complaint is now made as to plaintiff having been given the right to make this preliminary examination. Plaintiff was not, however, content with having indicated in this indirect way that an insurance company was interested in the defense of this case and might have to pay whatever damages were assessed, but plaintiff pursued the matter further in the course of the trial. One of plaintiff's principal witnesses was his father and guardian, who testified as to their living in this apartment building, the defective condition of the railing and screen of the back porch, how his son was injured, the extent of his injuries, etc. He stated that he rented the apartment from his brother, the defendant, paid the rent to him, and that his brother said he owned the property. There was some verbal evidence that the title was in defendant's wife, but that the husband had full control and management of the same. No objection was made to the verbal evidence as to title and there was no controversy as to this matter. The witness was then asked, *on redirect examination*, if he had a conversation with his brother, the defendant, at the hospital just after the accident, and, if so, what defendant said. The defendant objected unless there was a showing that such conversation was material, and the witness was again asked what defendant said about the accident. The witness replied: "He said he was very sorry, of course, and told me to go ahead and do all I could for the boy; to let no money stand in the way; *he was fully insured for it;* he would take care of it." The defendant ob-

jected and asked that the jury panel be discharged. In support of his objection the defendant urged that this statement as to defendant being insured had no tendency to prove any issue in the case. "There is no dispute about the ownership of this apartment house, no dispute about the date of the accident, no dispute about the accident actually having occurred; it has no bearing on whether or not it tends to show that the defendant reserved any portion of the premises under his control, and that, as a result thereof, the duty was on him to maintain that and repair it, and I am at a total loss to see what purpose it could serve other than to inject prejudicial inferences into this case, as far as this jury is concerned. I believe it was brought forth for that purpose." Plaintiff insisted that "an admission such as the defendant made at this time that he was insured, is tanamount to an admission of liability, and it is permitted for whatever it is worth. . . . Mr. Olian came over there and spoke to the boy's parents and told them he was sorry this thing occurred, and didn't want them to spare any expense; to go on and do everything they could for the boy; that he was covered, and that is tantamount to an admission of liability for the occurrence of the accident, and, on that theory, it is permitted." On the court's intimating that the objection should be sustained and the jury discharged, plaintiff said: "Well, there is no admission in this case that these people owned this property," to which the court replied: "Well, you have been allowed to prove that by his own admission, so that is not in the contest at all. It was admitted without objection. Ordinarily speaking, the best proof is the title. . . . Well, I don't think that is, necessarily, an admission of liability. If I carry insurance and my automobile runs into somebody, and I am held on the spot, I say, 'Go ahead and take care of him, I am insured.' I have a right to do that under the policy. . . . This is a very narrow question. I don't think it ought to have been asked, but that is for you to determine in handling your case. I should say that was a mistake. I am very strongly disposed to grant this request." Plaintiff still insisted that under the law he was entitled to have this evidence go to the jury, and, over defendant's objection, the court refused to discharge the jury panel and said to the jury: "Gentlemen, as to the statement made by Mr. Olian, in response to the question of his counsel concerning insurance, I want to give you this admonition: That, except in so far as, if the case goes to you for your finding on the issues, it may tend to show that the defendant Louis G. Olian admitted liability, it should be disregarded; that is to say, it is admitted only with that in mind for your consideration, if you give it that consideration, whether or not a verdict should be returned one way or another in this case. If the case should reach that stage, then this statement of Mr. Olian should not be considered as to the

question of determining damages in the case because there is an insurance company in the case; that is not a reason why damages should be awarded, if there are any other reasons under the law and the instructions of the court why there should be a verdict for the plaintiff.''

Further along in the trial, plaintiff's mother was called as a witness and after telling all about the accident, the defective condition of the porch, the extent of plaintiff's injuries and suffering, etc., she was asked: ''The day after this accident occurred, or that same evening, did you have any conversation with Mr. Louis G. Olian at the time? A. Yes, sir.'' Defendant objected and plaintiff admitted this was leading up to this same matter. ''Q. What conversation did you have with Mr. Olian? A. Mr. Olian said he was deeply grieved that this terrible accident happened; that we should do everything we could for the boy. Q. Well, did he say anything about whose fault it was? Did he say anything besides what you have already mentioned? A. Yes; he said that *had he not been so negligent this accident would not have happened;* had he had the porch repaired. Q. Now, don't answer this question until Mr. O'Herin has an opportunity to object. Was there any further conversation had between you and Mr. Olian? You can answer yes or no. A. Yes. Q. Now, without saying what that conversation was, I will have to ask you what was that conversation?

''Mr. O'Herin: I have no ground to base an objection on.

''The Court: Well, Mr. Habenicht is about to inquire of the same matter about which you objected to yesterday. Is that right?

''Mr. Habenicht: Yes.

''Mr. O'Herin: Then I am going to object.

''The Court: Well, I will allow her to answer, assuming that it will be along the same line that Mr. Habenicht asked yesterday, with the admonition to the jury that that may have to be considered here with a view that you draw the conclusion, if you see fit to do so as triers of facts in this case, that it was an admission of liability. Not for any other purpose whatever is this testimony concerning insurance admitted. In other words, gentlemen, the mere fact that this defendant, or these defendants, carried liability insurance— *and the evidence indicates they did*—is no ground for a recovery against these defendants. . . .

''The Court: You are making objection, Mr. O'Herin?

''Mr. O'Herin: I am going to move that the panel be discharged, if she answers.

''Q. Now, what other conversation, if any, was had, or what else did Mr. Louis C. Olian say, if he said anything? A. He said, 'Spare no expense for the child,' *that he was fully covered with insurance.*''

Thereupon the defendant moved that the jury be discharged, which

was overruled, and the defendant duly excepted. Plaintiff asked the witness no further questions.

The reading of this record discloses, we think, a persistent and insistent determination to get before the jury the fact that defendant had some sort of liability insurance which would protect him against loss from the jury's verdict, and that an insurance company would be merely paying what it had contracted to pay in consideration for the premium it had received. The plaintiff was not content to let the matter rest on the father's testimony as to defendant's statement that he was insured, though the court warned him of the doubtful character of the evidence and the narrow ground on which the evidence might be admissible. Plaintiff persisted in having the plaintiff's mother testify as to this same statement by the defendant in regard to insurance. It will be noticed that when the last witness had testified to all the material parts of defendant's admission made after the accident, including his admission of negligence in not repairing the defective porch screen, but was seemingly forgetful of defendant's mentioning his being insured, plaintiff was persistent in having the witness tell what he said further. When the witness finally remembered that defendant said he had insurance, the witness was promptly excused. Plaintiff had apparently carefully thought out and fortified himself with authorities to sustain the admissibility of such highly prejudicial evidence under certain circumstances and sought to bring himself within some exception permitting the evidence to go to the jury.

The first ground of admissibility of this evidence suggested by plaintiff was and is that it was indirectly and inferentially an admission of liability by defendant making the statement. There was, however, a direct admission of liability in this same statement of defendant apart from any mere inference from his stating that he had insurance, for the proved statement of defendant was that "he said that had he not been so negligent this accident would not have happened; had he had the porch repaired." Why should plaintiff want to bolster up this direct admission of liability and negligence by proving the very doubtful inference of liability contained in the statement of his having insurance? The mere fact that one who is being accused of liability for an accidental injury says to a friend or relative of the injured party that he has insurance is, to my mind, far from admitting his liability. His having liability insurance is not of itself an admission of liability, and why is a mere statement of that fact such an admission? However that may be, what we are holding is that there was no necessity or reasonable excuse for plaintiff injecting this highly prejudicial evidence into the case. It is true that plaintiff did not in making out his case then know that defendant would later go on the stand, as he did, and admit his neg-

ligence and liability, but unless defendant did go on the stand and deny his proved direct admission of liability and negligence, then same would, as it did, stand admitted. Plaintiff might well have waited to see if defendant would deny his proved direct admission before injecting this prejudicial evidence into the case, had he merely wanted to prove defendant's liability. Moreover, this inferential verbal admission of liability, if such it was, by one defendant would not be binding on his codefendant, and the jury had no trouble in finding the other defendant liable also.

Plaintiff also seeks to justify the admission of this prejudicial evidence on the ground that it would tend to prove ownership of the apartment house in question, but plaintiff already had been allowed to prove that plaintiff's father rented the house from defendant and had been paying him the rent for a long time, and that defendant claimed to own the house. Of course, the best evidence of ownership would be the title deeds, apparently available, but defendant made no objection to the verbal proof of ownership, and when this question of defendant's being insured was raised, defendant's counsel promptly objected and said: "There is no dispute about the ownership of this apartment house, no dispute about the date of the accident or its having actually occurred." Not only was this an admission of record of defendant's ownership, but we are persuaded that plaintiff was under no necessity whatever in making out his case to inject this prejudicial evidence. As said in Robinson v. McVay (Mo. App.), 44 S. W. (2d) 238, 240, "It probably would not be reversible error to show ownership of the car in some non-prejudicial manner but it was error to inject the highly objectionable matter of insurance in this case under the guise of showing such a fact. . . . There has been no good reason shown for the injection of the question of insurance in this case and, under the circumstances, we will indulge in the legal presumption that it was not done in good faith. The fact that the court sustained the objection to the question and instructed the jury to disregard the answer did not cure the matter."

 We are mindful, of course, of the rule that where evidence is competent and material on one issue in the case, it is not error to admit it, however prejudicial it may be, and then by proper instructions limit the evidence to its legitimate purpose. Edwards v. Smith (Mo. App.), 286 S. W. 428, 430, where it is said: "But the fact that an insurance company is protecting the defendant, or has assumed the defense of the case, may legitimately come to the knowledge of the jurors, if warranted by the developments of the trial or the particular circumstances of the case. In other words, if the incident of an insurance company being interested in the case becomes a constituent part of plaintiff's proof, there is no reason for con-

cealment of that fact. . . . The test would seem to be largely a question of good faith.'' And in Hill v. Jackson (Mo. App.), 272 S. W. 105, 106, the court said: ''The courts have repeatedly inveighed against the conduct of a plaintiff in unnecessarily getting before the jury the fact that there is liability insurance.'' See cases there cited and Boten v. Ice Co., 180 Mo. App. 96, 166 S. W. 883; Sotebier v. Transit Co., 203 Mo. 702, 721, 102 S. W. 651; Garvey v. Ladd (Mo. App.), 266 S. W. 727. The court and counsel should, however, keep in mind that the introduction of such highly prejudicial evidence is a serious and hazardous matter and is to be avoided rather than sought for. The plaintiff should take care not to introduce such prejudicial evidence unless there is a reasonable necessity for so doing. He should never try his case on the theory that if he can in some way get the jury to understand that an insurance company will ultimately have to pay the damages assessed, he is sure to win his case and get a big verdict. The jury' should be fed with food and not with poison. What was wisely said by this court in the recent case of Hannah v. Butts (Mo.), 51 S. W. (2d) 4, 7, will bear repetition here, to-wit: ''It seems to be the impression of the bar that the fact that the liability of a defendant in a tort action is covered by insurance will, in the minds of the average jury, not only justify a verdict for plaintiff but a very generous assessment of damages as well. The verdicts in many cases warrant that view. With this in mind, plaintiffs' counsel in actions such as this, and we speak generally, cannot resist the temptation of bringing into the view of the jury an insurance company, a corporate entity that is able to discharge, and whose business it is to discharge, any liability that they may assess for defendant's wrongdoing. In some instances the disclosure of the relation of such a company to the parties or to the trial is not only proper but necessary to the due administration of justice. In a majority of cases, however, such revelation is made, or attempted to be made, for purposes that may be justly termed sinister.'' This was said in a case where defendant relied on a release of damages procured by the interested insurance company, which plaintiff alleged in his reply was procured by the fraud of the insurance company's agent, thus raising the fact of the insurance company's interest in the case by the pleadings. Nevertheless, this court further said: ''There was no occasion for reading the pleadings to the jury in this case, just as there is none in any case. There was, therefore, not the slightest excuse or justification for mentioning insurance or an insurance company in the presence or hearing of the jury after it was empaneled, unless and until Morgan (the insurance agent) was put on the witness stand by the defendant (in order to prove the release); and that was never done. That the persistent attack on an invisible insurance company was highly prej-

udicial to defendant cannot be doubted. [Grindstaff v. Steel Co. (Mo.), 328 Mo. 72, 40 S. W. (2d) 702, 706.]''

We also note but are not impressed with plaintiff's suggestion that he was justified in insisting on plaintiff's mother relating all that defendant said about the accident, inclusive of the statement that he was covered by insurance, in order to avoid any seeming discrepancy or contradiction between her evidence and that of his father as to this same conversation. If the evidence was prejudicial and improper, plaintiff was not entitled to have the jury's memory refreshed in this way.

It is also true that the trial court carefully instructed the jury on each occasion that the evidence as to insurance was admitted solely for the purpose of having the jury consider it as an admission of liability, and ''the mere fact that this defendant, or these defendants, carried liability insurance—and the evidence indicates they did— is no ground for a recovery against these defendants.'' The trouble is that the fact that defendant was forced to object every time the subject of insurance was mentioned, and there was a heated colloquy, partly at least out of the hearing of the jury, followed by the court's instructions that the defendant's being insured could not be taken as a ground for plaintiff's recovery of damages, emphasized rather than mitigated the harmful effect and called attention to the fact that defendant was trying to cover up such an important piece of information.

The record here does not disclose, as a matter of fact, what kind of insurance, if any, defendant really had or to what extent he was in fact protected, if at all, against a verdict in this case. He might have all sorts of trouble in collecting his insurance. The defendant was helpless in showing anything of this kind, but, after vainly objecting to the evidence, was compelled to let the case go to the jury, who would act on the assumption that whatever verdict they gave against defendant would be taken care of by the invisible insurance company.

The assigned error that the instruction on the measure of damages mentioned the amount sued for as being the maximum recovery allowed does not merit further discussion.

The only other question, therefore, is whether the error in admitting the evidence heretofore discussed is shown to be harmful. It is insisted that the verdict is excessive. As we have said, defendant's liability stands conceded and the harmful effect of the evidence admitted can only be reflected in the size of the verdict. On this point we have no hesitation in saying that the verdict of $8,500 is large, if not clearly excessive, for the injuries shown. Without recounting all the evidence, it is shown that plaintiff, a boy of thirteen years of age, received what is termed a hair line fracture of the

skull some three inches in length. He was in the hospital two weeks and was at first in a critical condition, but the physician in charge said he responded to treatment and improved. This doctor would not say that the fracture extended through the inner bone of the skull or was not confined to the outer layer. During the first twelve hours plaintiff seemed not to be doing well and his vomiting persisted. After the first twelve hours he seemed to improve. There was nothing given him to relieve pain as he needed nothing. His nervous system was severely shocked. He was discharged from the hospital in two weeks as cured, but the doctor continued to treat him. He responded to the treatment and seemed to be doing, as the doctor said, very well for the type of injury he had. There was a fracture of the skull but he found no depression. Asked as to the permanency of the injury, he said there was an injury to the brain, but he could not say whether there was any permanency or not, that he could not tell what might happen in the future. On cross-examination this doctor said: ''Apparently this boy made a splendid recovery from the injury. There was no depression in this fracture that I could find. The lesion didn't go any farther. And, instead of getting worse, the boy grew better. I would say he has recovered up to the present time, but I could not guarantee the future. There are no objective symptoms that I can feel or see now.''

The plaintiff was injured in June and returned to school in September. He kept up his grades and graduated from the junior high school and at the time of the trial was in his second year in high school, doing very well. His teachers testified that he was normal in every way and they never knew that there was anything wrong with him. The instructor in athletics testified that this boy took all the athletic exercises and that he never noticed anything wrong or abnormal. The plaintiff himself said he never missed school because of his condition. The boy's growth was normal and he increased in weight from ninety-eight pounds at the time of the accident to one hundred twenty-six pounds at the time of the trial, eighteen months later. The father and mother testified that since his injury plaintiff was subject to severe and frequent headaches and some sleeplessness which continued to the time of the trial; that there was considerable change in the boy's activities and playfulness after his injury. The boy corroborated this to some extent. On the whole, we think there is no substantial evidence of any permanent physical or mental impairment on which to base damages. His headaches and more or less sleeplessness are what are termed subjective symptoms and may or may not have been caused by this fall. As we have said, the verdict is large and seemingly excessive. We might, of course, order a *remittitur* as the price of not ordering a new trial if an excessive verdict was the only error shown by the record. We must, however,

on the record here, attribute the large verdict to the prejudicial evidence which went to the jury, and in such case the error can only be corrected by ordering a new trial.

The judgment is, therefore, reversed and the cause remanded. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur, except *Hays, J.,* not voting because not a member of the court at the time cause was submitted.