RUBYE CHEFFER v. EAGLE DISCOUNT STAMP COMPANY, a Corporation, and ANDREW LUKE, Defendants, EAGLE DISCOUNT STAMP COMPANY, Appellant.—156 S. W. (2d) 591.

Division Two, October 25, 1941.

Rehearing Denied, December 16, 1941.

*Fred H. Blades* for appellant; *Moser, Marsalek & Dearing* of counsel.

*Mark D. Eagleton, James A. Waechter* and *Roberts P. Elam* for respondent.

WESTHUES, C.—Respondent, Rubye Cheffer, filed this suit to recover damages for personal injuries sustained in a collision of two cars. The defendants were Eagle Discount Stamp Company, a corporation, and Andrew Luke. A trial resulted in a verdict in favor of plaintiff and against the Stamp Company in the sum of $15,000. The jury returned a verdict in favor of the defendant Luke. From the judgment defendant Stamp Company appealed.

Questions of law raised on this appeal, which will be later considered, require a rather full statement of the facts. Ned Cheffer, plaintiff's husband, was, at the time plaintiff sustained her injuries, an employee and agent of the defendant Stamp Company. On July 17, 1937, he was at Blythesville, Arkansas, on business for the company. He was called by his superiors to come to St. Louis, Missouri. Cheffer, accompanied by his wife, proceeded in his Chrysler on highway number 61 toward St. Louis. He reached the junction of highways 61 and 25 in Jefferson County, Missouri, about 7:00 P. M., when and where the collision occurred. Highway number 61, running north and south, is a two lane highway south of the junction. At the junction and for a number of miles north thereof it is a four lane highway. Highway number 25 does not cross highway 61, but runs easterly therefrom towards St. Genevieve. The approach and junction of highway number 25 with highway 61 was made by the construction of a "Y." That is to say, about three hundred feet or so east of

highway 61 highway number 25 divides, one arm going in a southerly direction to highway 61, for travelers desiring to go south, and another arm extending in a northwesterly direction, for travelers desiring to go north, thus leaving a triangular plot of ground surrounded by highways, referred to in the evidence as an island. The collision occurred on highway 61 immediately north of this so called island. The evidence revealed that Cheffer, while going north toward the point of collision, was following another car. These two cars were traveling in the lane immediately east of the center line of the four lane highway. Witnesses estimated their speed at forty-five to sixty-five miles per hour. At the same time defendant Luke was traveling south in a car on highway 61. He too was following a car, and these cars were traveling south in the lane immediately west of the center line of the four lane highway. The driver of the car ahead of Luke desired to turn left, or east, on highway 25, and for the purpose of doing so stopped a short distance north of the island to permit the approaching cars, Cheffer's and the car ahead of Cheffer, to pass. Immediately after Cheffer's car passed the car waiting to turn left, the Chrysler driven by Cheffer and the car driven by Luke collided head-on. Plaintiff was seriously injured as the result of this collision. There was little dispute as to what occurred up to this point. The real controversy at the trial was as to what transpired immediately before and at the time of the collision. Plaintiff testified that she noticed what she called a truck stop near the center of the highway; that the car traveling ahead of them turned and passed around that car; that her husband turned his car to the left to pass but failed to get by. That was all she remembered until she recovered consciousness in a hospital. Cheffer, the husband, who was also seriously injured, testified that he did not remember anything that happened after he stopped to have his car serviced a few miles north of Blythesville, Arkansas. This lapse of memory he claimed to be due to a head injury he sustained in the collision. The medical testimony supported that theory. The witnesses for the Stamp Company were the occupants of the car that was traveling north ahead of Cheffer. According to their testimony, Luke, as he approached the car which had stopped to turn left, turned left to pass around the parked car, forcing the driver of their car to swerve east to avoid a collision, and immediately after he, Luke, passed their car he crashed into the Chrysler following them. Two witnesses who were in the parked car testified that the Chrysler was traveling about sixty or sixty-five miles per hour. These witnesses to some extent corroborated the evidence as given by the occupants of the car traveling north. Luke was called by the plaintiff as a witness. He testified that the Chrysler, immediately after it passed the standing car, turned to the left of the center of the highway and crashed into his car. Statements of how the accident occurred, signed by the three occupants of the

first car going north, were also introduced in evidence. The statements alleged to have been made by these witnesses as to how the accident occurred varied materially with their evidence given at the trial. It was conceded that there was substantial evidence in the record to support the verdict of the jury.

Neither of the defendants claimed that plaintiff was guilty of any negligence. The issue tried was whether Luke or plaintiff's husband, Cheffer, turned to the wrong side of the center line of the highway and thereby caused the collision. Plaintiff's testimony tended to throw the blame on her husband, and of course Luke's testimony, if believed, convicted Cheffer of negligence. At the close of plaintiff's case Luke asked the court for a directed verdict, but after some discussion withdrew the request. Thereupon defendant Stamp Company offered an instruction directing a verdict for the defendant Luke. The trial court refused to accept this instruction. Luke remained in the case, introduced evidence and received a favorable verdict from the jury. The action of the trial court in refusing to accept and to give the instruction offered by the defendant Stamp Company on behalf of the defendant Luke was assigned as error on the ground that its refusal was prejudicial to the Stamp Company. It may be conceded that plaintiff failed to make a submissible case against Luke. The action of the trial court may have redounded to the detriment of the Stamp Company, but that does not necessarily mean that the ruling was erroneous. The defendant Luke had a right to conduct his defense in a manner suitable to himself, and if he wished to go through the trial in the hope of obtaining a verdict at the hands of the jury at the close of the case and thereby terminate the controversy as to him he had the right to pursue that course. It was within his right to waive the demurrer at the close of plaintiff's case. Appellant cited cases from other states in support of its theory, but we need not discuss them. The procedure followed was authorized by the established law of this State. [The case of Gabelman v. Bolt, 336 Mo. 539, 80 S. W. (2d) 171, l. c. 172 (3, 4), has been cited.] In that case, however, the situation was just the reverse. At the close of plaintiff's case the trial court instructed the jury to return a verdict for one of the defendants. The other defendant claimed that such action was error because it meant that the court was telling the jury that the co-defendant was not guilty of any negligence, while the objecting defendant claimed that his co-defendant's negligence was the sole cause of the injury. It was there ruled, however, that the action of the trial court was not legally prejudicial to the objecting defendant because he was given the right to introduce evidence placing the entire blame upon his co-defendant and the instructions given by the court authorized the jury to find a verdict in his favor. It may be noted also that at the beginning of the trial the attorney for the Stamp Company in this case informed the jury the evi-

dence would disclose that Luke's negligence was the sole cause of the collision. That charge was supported by evidence introduced by the Stamp Company. The point must be ruled against appellant.

 The next question presented arose in the following manner. Paul Simmons testified for the Stamp Company. He was one of the occupants of the car traveling north ahead of Cheffer. On cross-examination he was asked if he had not signed a statement, at the request of the defendant Luke, as to how the accident occurred. He answered that he had. Thereupon the attorney for plaintiff handed the witness a paper and asked him if it were the statement he had signed. He answered that it was. He was then asked to read it to the jury, which he did. No objection was interposed by counsel for the Stamp Company. After the statement had been read, which contained matters in conflict with the evidence of the witness at the trial, the attorney for the Stamp Company asked the court to declare a mistrial because the statement as read concluded as follows:

"A representative of the insurance company received a signed statement from me and he gave me fifty cents to buy some cigarettes. I have read the above and it is true."

Previous to that Simmons had been asked if he had not signed a statement at the request of one McGinnis and if he had not received fifty cents. The answer was in the affirmative. Simmons also testified that McGinnis arranged for him to be at the trial and that he expected to be reimbursed for his expense. It is evident from the record that the insurance company was active in conducting the defense. The only time an insurance company was mentioned was when the witness read the statement above mentioned to the jury. Appellant insisted that the trial court erred in not declaring a mistrial because of the reference made to the insurance company. In certain circumstances any reference made during the course of a trial to the fact that the defendant carried insurance constitutes reversible error. [See Olian v. Olian, 332 Mo. 689, 59 S. W. (2d) 673; Hannah v. Butts, 330 Mo. 876, 51 S. W. (2d) 4.] In other circumstances reference to an insurance company may not constitute reversible error. [See Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S. W. (2d) 702, l. c. 706 (12, 13); Whitman v. Carver, 337 Mo. 1247, 88 S. W. (2d) 885, l. c. 888 (1, 2).] We need not decide in which class the present case falls because the defendant failed to object to the evidence when it was introduced. Note that the witness had been cross-examined and asked about the statement he had signed and also about the fifty cents given him by McGinnis. If the attorney for the Stamp Company desired to object to any matters contained in the statement he should have made his objection before the statement was read to the jury. In 64 C. J. 117, sec. 125, the rule is stated thus:

"Where a paper is shown to, and read by, a witness while on the

stand, the correct practice is to permit opposing counsel to inspect the paper . . ."

To permit a party to sit idly by and let a written statement be read to a jury and then for the first time raise an objection and have a mistrial declared would lead to chaos. It has been consistently ruled that a party waives an objection if he does not make it timely. In 64 C. J. 173 we read:

"For reasons which are perfectly obvious, an objection to the introduction of testimony must be made in apt time, at the earliest possible opportunity after the objection becomes apparent, or it will be held to have been waived." [See also State v. Matkins, 326 Mo. 1072, 34 S. W. (2d) 1, l. c. 5 (8); Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742, l. c. 747 (8, 9).]

It will not do for a party to say he did not know the contents of an exhibit. It is his duty to ascertain the contents and make an objection timely and thus prevent error. Appellant's only request was that the trial court declare a mistrial. It is evident that the refusal was justified.

█ Appellant assigned error to the giving of instruction number four on behalf of the defendant Luke. This instruction informed the jury in substance that if it found from the evidence that Luke did not drive his car to the left of the center of the highway, but that the driver of the car of the defendant Stamp Company was negligent and turned to the left of the center of the highway, and that such negligence was the sole cause of the collision, then the jury should return a verdict in favor of Luke. The instruction properly submitted the question of Luke's liability to the jury. Appellant urges that plaintiff did not allege or prove that Luke was negligent; that plaintiff could not recover a verdict against Luke on the evidence introduced by the Stamp Company; that therefore the instruction was not within the issues. Appellant is in error as to plaintiff's petition. In it plaintiff charged the defendant Luke with negligently failing to sound a warning and negligently failing to stop, slacken his speed, turn or swerve his car so as to avoid the collision. As to whether plaintiff could recover against Luke on the evidence of the Stamp Company should be of no concern to the Stamp Company. Luke was entitled, under the evidence, to have the question of his liability submitted to the jury.

█ Instruction number seven covered the question of the credibility of the witness. It concluded as follows:

"And in this connection you are further instructed that if you believe any witness has knowingly testified falsely to any material fact in issue in this case, you are at liberty to reject all or any part of the testimony of such witness."

It is insisted that the instruction should have read, that if any witness has *wilfully* testified falsely instead of *knowingly*. There is

no merit in this contention. If a witness knowingly testifies **[595]** falsely he is necessarily conscious of the fact at the time. "Knowing" means conscious, cognizant. Webster's New International Dictionary (2 Ed.), see also 35 C. J. 918, sec. 4, where we note the following:

"KNOWINGLY. An adverb, meaning with knowledge. 'Knowingly' is frequently used in contradistinction to 'ignorantly,' 'innocently,' or 'unintentionally.' It is sometimes used in the sense of 'intentionally.'"

If, therefore, the witness "knowingly" testified falsely he did it intentionally. The instruction, as written, could not have been interpreted otherwise. There is nothing in the case of State v. Willard, 346 Mo. 773, 142 S. W. (2d) 1046, cited by appellant, which condemns the instruction given in this case.

■ The last point briefed is the question of the amount of the verdict. Appellant alleges it to be excessive. We do not think it is. The principal injuries, briefly stated by Dr. J. A. Key, were:

"I was called in this case by Dr. Schnoebelen shortly after Mrs. Cheffer arrived at the Jewish Hospital. At the time I made my examination, I found she had multiple injuries and was in a state of profound shock. There was a compound fracture of the kneecap with some involvement of the tibia, which is the large bone of the leg, on the left side, and the knee joint having been torn open. There was a fracture of the left humerus, which was oblique and comminuted, just below the elbow, and there were fractures on the left side of several ribs, according to my records, it was the first, second, seventh, eighth, ninth and tenth ribs which were broke, and due to her poor general condition, she was treated for shock until she reacted and then the knee joint was operated on and the loose fragments of bone were removed and the knee was washed out and the wound closed, and the fracture of the humerus was treated in a plaster cast with traction, and the fractures of the ribs were left alone. She remained in the hospital until September the 17th, when she was sent to her home in Kansas City and referred to a physician there."

The broken arm had to be reset twice. Plaintiff was in the hospital at St. Louis for seven weeks. The injury to the knee caused the movement thereof to be permanently restricted and the leg shortened. Her left arm was rendered almost useless. The injury to plaintiff's left side and the broken ribs produced a change in the contour of the chest. The injury to the head rendered plaintiff unconscious for twenty-four hours and she continuously suffers with headaches and dizziness. The injuries were unusually painful. For example, the left knee joint was torn apart. She suffered severe nervous shock. Many of her injuries are of a permanent nature and she will always be unable to perform her usual household duties. Note what Dr. Pernoud had to say with reference to the head injury:

"In the nerve symptoms I found, the convergent eye, the tongue protruding to the left, the elbow and abdominal reflexes exaggerated, it was my opinion that she had sustained severe damage to her brain. Severe and constant pain on the front part and side of her head, and dizziness when she stoops or bends, could be accounted for by this character of brain damage. I do not expect any improvement of any of these conditions I have enumerated."

Citations of authority ought not be necessary to sustain the verdict of $15,000. Plaintiff cited among other cases, Pitcher v. Schoch, 345 Mo. 1184, 139 S. W. (2d) 463, l. c. 471 (17, 18) ; O'Brien v. Rindskopf, 334 Mo. 1233, 70 S. W. (2d) 1085, l. c. 1093 (10) ; Olian v. Olian, 332 Mo. 689, 59 S. W. (2d) 673, l. c. 678 (10) (11). We do not have a condition present in this case as found in the Olian case. Judging the injuries in the other two cases and the amounts of the judgments as affirmed by this court in comparison with the injury sustained by plaintiff in this case we are of the opinion that the sum of $15,000 was not excessive.

The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.