Clarence A. GRAY (Plaintiff), Respondent,

v.

George WILLIAMS (Defendant), Appellant.

No. 29427.

St. Louis Court of Appeals.

Missouri.

April 17, 1956.

Holtkamp, Miller & Risch, St. Louis, for appellant.

Cox, Cox & Cox, Harvey B. Cox, William A. Moffitt, Jr., St. Louis, for respondent.

MATTHES, Judge.

This personal injury and property damage action resulted from a hit-and-run collision. Plaintiff recovered a verdict and judgment for $4,500. Defendant appeals.

We are called upon to decide two points. First, the defendant contends that plaintiff's counsel improperly injected the matter of insurance on voir dire examination of the jury panel, and that the trial court should have sustained defendant's motion for a mistrial; second, defendant contends that plaintiff failed to make a submissible case, and defendant's motion for a directed verdict should have been sustained. We consider these points in reverse order.

In determining whether plaintiff made a submissible case, we must consider all of the evidence, and all reasonable inferences to be drawn therefrom most favorable to the plaintiff, whether such evidence comes from the plaintiff or the defendant, Leathers v. Sikeston Coca-Cola Bottling Co., Mo.App., 286 S.W.2d 393, loc. cit. 396, and cases there cited, and disregard the evidence unfavorable to plaintiff. Peterson v. Brune, Mo.Sup., 273 S.W.2d 278, loc. cit. 282, 283; Leathers v. Sikeston Coca-Cola Bottling Co., supra.

Plaintiff arrived at the home of his friends, Mr. and Mrs. Bierbower, around 8 o'clock on December 24, 1954. Some time thereafter he took Mrs. Bierbower for a ride on his motorcycle. From the Bierbower home plaintiff proceeded over certain streets in St. Louis and St. Louis County, eventually reaching Lindbergh. He proceeded over this highway to Telegraph Road, over the latter to Kingston, and over Kingston to its intersection with Broadway. While on Kingston he overtook and passed a truck. The same vehicle passed plaintiff and his companion, then slowed its speed and plaintiff again passed the truck. Plaintiff brought his motorcycle to a stop at the intersection, and while it was stopped a truck struck the rear fender of the motorcycle. At the time plaintiff was wearing leather mittens. After the truck, which failed to stop at the intersection, struck the rear part of the motorcycle, the truck and truck fender "caught my hand on top of the handlebar and slid us seven or ten feet to the right, or forward and to the right". The motorcycle fell on its left side. The rays from the headlight on the motorcycle lit up the read end of the truck and plaintiff was able to see that there was no license plate attached thereto. Plaintiff and Mrs. Bierbower were taken to Alexian Brothers Hospital for treatment. While there they gave a report to two deputy sheriffs of St. Louis County, Missouri. The mittens worn by plaintiff were exhibited to the officers at the hospital. There was an indentation scraped into the left mitten, which was observed by the investigating officers, and one

of them testified to the presence of paint on the same mitten.

On the evening of December 25th, the officers and plaintiff inspected defendant's 1948 Reo dump truck at the latter's home. Based upon information that the officers had obtained from plaintiff, they were looking for a red truck. Defendant's vehicle had red fenders and no plate was on the rear end thereof. The officers discovered a rubbed or scratched mark on the right front fender of defendant's truck. It had a fresh appearance. One of the officers testified that he discovered two fresh marks on the fender. They also found, according to Officer Watts, "something that looked like a piece of lint" underneath the fender "in the beveled edge". When the officers asked defendant whether he was at the intersection around 9:00 o'clock on the evening of December 24th, he stated he could have been as he traveled that road several times each night. In this connection it is significant to note that defendant admitted in his deposition, and again at the trial, that he left the Twelve Five Club between 8:30 and 9:00 o'clock on the night of the occurrence, and traveled over Kingston to its intersection with Broadway, and thence over Broadway (the identical route followed by plaintiff). Defendant also told the investigating officers that he could have been involved in the collision, his truck could have come in contact with the handlebars of the motorcycle, and because of the heavy construction of his vehicle he would not have known it. Defendant admitted making this statement to the officers.

Bearing upon his activities on the afternoon of December 24th, defendant testified that he and certain fellow employees, after leaving their place of work at 12:00 o'clock, went to the Twelve Five Club, a restaurant and tavern, and ate dinner. Defendant stayed at the club until "anywhere from 8:30 to 9:00 o'clock". He denied drinking intoxicating liquor. He "just sat around there".

Pursuant to permission given by the defendant during the course of the taking of his deposition, counsel for plaintiff, in the presence of a commercial photographer, took a sample of the paint from the right front fender of the defendant's truck at the point where the officers described the marks found by them on the evening of December 25th. The scrapings and the plaintiff's left mitten were delivered to the Associate Director of the Police Laboratory of the Police Department of St. Louis, Missouri. This chemist testified that when he received the mitten it had two paint smears on the back of it, one on the leather area, the other on the elastic wristband. The portion of the leather was removed and analyzed along with the paint scrapings taken from the right front fender of the defendant's truck. This witness testified in detail as to the method employed by him in making the analysis of the paint on the mitten and the paint from the truck. His conclusion was that the same five chemical elements present in the paint on the mitten were present in the paint from the truck, and that the paint on the mitten was identical with the paint removed from the truck's fender.

With respect to the contention that a submissible case was not made, our consideration has been delimited by defendant in his brief to the sole point that the defendant's truck was not sufficiently identified as the vehicle which came in contact with plaintiff and his motorcycle.

 It is at once apparent from the facts, supra, that plaintiff relied in part on circumstantial evidence for the purpose of connecting defendant with the occurrence out of which the litigation arose. This a litigant may do as the rule is firmly established in this jurisdiction that facts necessary to sustain recovery in a civil case may be proved by circumstantial evidence. When this type of evidence is resorted to, the facts and circumstances proved must be such that the necessary facts to support a verdict may be inferred and must reasonably follow. Such evidence must exclude guesswork, conjecture, and speculation as to the existence of the necessary facts. Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, loc. cit. 33; Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511; Schoen v. Plaza Exp.

Co., Mo.Sup., 206 S.W.2d 536; Ruby v. Clark, 357 Mo. 318, 208 S.W.2d 251.

Defendant is in accord with this principle, but urges that the direct and circumstantial evidence relied upon by plaintiff was insufficient to present a jury question on the vital matter of identification of defendant's vehicle. In short, he says that the evidence did not exclude guesswork, conjecture, and speculation as to the existence of the necessary facts. To support this precise contention defendant has seized upon certain testimony. For example, on the night of the collision, and from what plaintiff saw of the truck immediately after being struck he could not tell its color except to say that it was dirty. He also told the officers the same night that the vehicle which struck his motorcycle was a water truck, not one having a dump body on it. The expert who made the paint analysis admitted on cross-examination that the paint on the mitten could have come from another truck having identical red paint. Such testimony, standing alone, would strengthen defendant's position. But there is much more in the case, and in considering the question of the sufficiency of the proof, we must apply the favorable evidence rule, and as pointed out, supra, disregard the evidence unfavorable to plaintiff.

■ Careful analysis of the evidence in light of the favorable evidence rule compels the conclusion that a jury case was made. Summarizing the evidence, direct and circumstantial, these facts appear: (1) Plaintiff's motorcycle was struck at the intersection by a truck at approximately 9:00 o'clock p. m.; (2) the truck had no license plate on the rear end; (3) the truck had red fenders; (4) a fender of the truck came in contact with plaintiff's left mittened hand; (5) red paint was seen on the mitten shortly after the occurrence (the mitten, introduced in evidence, appeared as an exhibit in this court and the red substance is still clearly present thereon); (6) defendant owned a truck with red fenders answering the general description of the truck that struck plaintiff; (7) defendant's truck had no license plate on the rear end when examined on the evening of December 25th; (8) fresh marks were found on the right front fender of defendant's truck on the evening of December 25th; (9) paint taken from the fender at the point of the marks was identical to paint on plaintiff's left mitten; (10) defendant admitted he drove on Kingston Avenue to Broadway about 9:00 o'clock p. m. on the night of the occurrence, and that his vehicle could have struck the handlebars of the motorcycle without his knowing it; (11) defendant never denied striking plaintiff, as illustrated by this testimony:

"Q. As I understand your testimony, you simply don't remember having any contact with the motorcycle? A. I do not."

The case of Ruby v. Clark, supra, which rested largely on circumstantial evidence, is a complete answer to defendant's assertion of no liability. The established circumstances herein are just as consistent, if not more so, than in the Ruby case, wherein it was held that the circumstances were sufficient to support plaintiff's claim. Other cases supporting our holding are Van Brock v. First Nat. Bank in St. Louis, 349 Mo. 425, 161 S.W.2d 258; Brawley v. Esterly, Mo.Sup., 267 S.W.2d 655; Padgett v. Missouri Motor Distributing Corporation, Mo. Sup., 177 S.W.2d 490; Richter v. United Rys. Co. of St. Louis, 145 Mo.App. 1, 129 S.W. 1055. None presents facts identical to those under consideration, but the analogy is sufficient to make them supporting authority.

Defendant cites and relies upon Bates v. Brown Shoe Co.; Lappin v. Prebe; and Schoen v. Plaza Exp. Co., supra. Those cases were bottomed, in part at least, on circumstantial evidence. They are not controlling, however, because unlike the instant case, the circumstances were not consistent with plaintiff's claim of liability and did not exclude guesswork, conjecture, and speculation as to the existence of the necessary facts.

We turn to the assignment that the matter of insurance was improperly injected

into the case on voir dire examination of the jury panel. During this stage of the trial a prospective juror announced that she was the secretary to the president of General Insurors. Plaintiff's counsel thereupon asked this question:

"I will ask you in your connection with the General Insurors, as secretary to the president of that company, do you feel you would have any bias or prejudice in this case, and I will state to you, *your company is not in this case.*"

Defendant's attorney moved for a mistrial. The request was denied, but the court sustained the objection, and stated to the jury, " * * * but I will sustain the objection to that remark of Mr. Cox about that company not being interested, and blot it out of your minds".

We are confronted with the assertion that the italicized portion of the question, impliedly at least, informed the panel that an insurance company was interested in the litigation. Plaintiff counters by urging: (1) That in view of the prospective juror's occupation, the question was not only proper but necessary to determine whether she could try the case without bias or prejudice where her company was not involved; (2) that there is no showing of bad faith on the part of plaintiff's counsel in propounding the question; (3) that the conduct on voir dire examination of jurors and its possible effect, if any, upon the trial, and its outcome, must be left largely to the sound discretion of the trial court.

So much has been written on the subject that it is hardly necessary to reiterate that the improper injection into the case that the defendant was covered by liability insurance, constitutes reversible error, especially so if thrown in purposefully or in bad faith. Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673; Pitcher v. Schoch, 345 Mo. 1184, 139 S.W.2d 463, loc. cit. 469; Mc-

Caffery v. St. Louis Public Service Co., 363 Mo. 545, 252 S.W.2d 361, loc. cit. 367.

We have concluded that what took place in this case does not warrant us in interfering with the action of the trial court. This does not mean that we give blanket approval to the question in its criticized form. To inform every prospective juror who is employed by, financially interested in, or in any way connected with *an* insurance company, that "your company is not in this case" could, for obvious reasons, have the effect of implanting in the minds of the jury prejudicial information, and this should be avoided. Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538, loc. cit. 540. We cannot say, however, that the single statement made in this case had the effect and produced the result contended for by defendant. And surely the occurrence does not justify us in holding the learned trial judge guilty of error in not taking more drastic action. This follows because of the basic principle that whenever the trial judge is called upon to rule on the question, "much must be left to the sound discretion of the trial court and only where a manifest abuse of discretion appears should this court interfere". Carter v. Rock Island Bus Lines, Inc., 345 Mo. 1170, 139 S.W.2d 458, loc. cit. 462; Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 11 S.W.2d 268, loc. cit. 274, 275; Gerran v. Minor, Mo.App., 192 S.W.2d 57, loc. cit. 61; May v. Hexter, Mo.App., 226 S.W.2d 383, loc. cit. 385; Johnston v. Owings, Mo.App., 254 S.W.2d 993, loc. cit. 998. This principle rests on the proposition, at least in part, that the trial court is in an advantageous position to determine whether counsel who has introduced insurance into the case was motivated by good or bad faith in doing so. It has in effect been said, again and again, that unless the fact that defendant was insured was purposefully or in bad faith injected into the case, the action of the trial court in approving the procedure will not be disturbed.[1] There is nothing in the record permitting us to find that counsel for

1. Cazzell v. Schofield, 319 Mo. 1169, 8 S.W.2d 580, loc. cit. 590, 591; Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673; Carter v. Rock Island Bus Lines, Inc., 345 Mo. 1170, 139 S.W.2d 458; Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538;

plaintiff, in asking the one question complained of, acted in bad faith, with sinister purpose, or with the idea of thereby informing the jury that an insurance company would pay any judgment rendered against the defendant. We must indulge the presumption that he acted in good faith. Johnston v. Owings, Mo.App., 254 S.W.2d 993, loc. cit. 998, supra, and cases there cited.

In view of what has been said, we hold that the rights of the defendant were not prejudiced by reason of the voir dire examination.

The judgment should be and is affirmed.

ANDERSON, P. J., and SAM C. BLAIR, Special Judge, concur.

Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 11 S.W.2d 268; Pitcher v. Schoch, 345 Mo. 1184, 139 S.W.2d 403; Gerran v. Minor, Mo.App., 192 S.W.2d 57; Johnston v. Owings, Mo.App., 254 S.W.2d 993.