**STATE of Missouri, Respondent,**

v.

**Leonard SCOTT, Appellant.**

**No. 47504.**

Supreme Court of Missouri,
Division No. 1.
March 14, 1960.

Robert P. Stanislaw, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

DALTON, Judge.

Defendant was charged and convicted of the offense of possession of an apparatus,

device and instrument for the unauthorized use of narcotic drugs, to wit, heroin, as charged in an information filed in the Circuit Court of St. Louis County. See Sections 195.020 and 195.200 RSMo 1957 Supp. (Laws 1957, p. 679), V.A.M.S. His punishment was assessed by the jury at five years' imprisonment in the State Penitentiary, but the court found the punishment excessive, reduced it to two years and sentenced defendant accordingly. Defendant has appealed from the judgment entered against him and assigns error on the giving of Instruction No. 1.

Defendant, age 22 years, was arrested about 1 p. m., August 15, 1958, in the City of Kirkwood by two uniformed police officers of that city. He was driving a 1951 Ford automobile east on Clinton Street with a cardboard license tag affixed to the rear of the car and the officers stopped the car and asked him for his driver's license. When he produced his own "draft card" and a driver's license issued to his brother, William Scott, he was placed under arrest for driving a motor vehicle without proper license plates and for operating a motor vehicle without an operator's license. There were two other persons in the car, a boy in the right front seat and a man in the rear seat.

Immediately after defendant was arrested the officers searched him and the automobile. In the front seat, "just a little to the left of center" and directly to the right of where defendant had been sitting, officer Strehl saw some folded envelopes and crumpled-up newspapers which he took apart rather hurriedly. Among the papers he found a rubber syringe or eye dropper, also referred to as a "plastic dropper with a rubber bulb on the end," a screw-type metal bottle cap with a blackened base or bottom and with residue inside, a hypodermic needle with a screw-on section in the needle which fitted onto the end of the plastic syringe, and a piece of cotton waste. The articles were in one package wrapped in an old white envelope and parts of a torn and crumpled newspaper. The officer took charge of the articles and asked defendant what they were and what he was doing with them. Defendant said his mother was a diabetic and she used these instruments for taking insulin. Later in the afternoon, the defendant said that he knew that the several articles were located in the car, but that they belonged to his brother and a person named Pore Jesse.

The mentioned articles were subsequently examined by a chemist employed in the St. Louis Police Laboratory. He made certain analyses and tests, which disclosed that the material contained in the bottle cap was heroin. The eye dropper and needle also showed the presence of heroin. This witness testified that the mentioned articles were suitable for use and he explained how they could be used in placing a narcotic drug, such as heroin, into the human body.

After defendant was taken to the police station a written statement was taken and signed. Defendant said that he had previously seen a hypodermic needle; that he had seen one used by Jesse, when it had "dope" in it; that he had seen the needle on the day of his arrest; that he had put it under the seat of the car before he was arrested because he didn't "want the cops to find it"; that there was an eye dropper with the needle; that Pore Jesse owned the needle found in the car; that Jesse gave it to him four days before to put in the glove compartment; that the last time he saw it was at 7 a. m. on the day of his arrest; and that, "I seen it today when you all found it in the car. I moved it under the seat." There was no explanation as to how the articles became located on the front seat or who placed them there.

Defendant testified on his own behalf at the trial. His testimony and that of his witnesses tended to show that his several statements to the police officers and the signing of the written statement were not voluntary, but were made under coercion and the statements were not true. Defend-

ant testified that on the evening of August 13, 1958 (two days before his arrest), he was in the mentioned automobile with his brother William, the owner; and that, while defendant was seated in the car, a party by the name of Jesse, who had previously been in the car, returned to it and handed him (defendant) a package to put in the car. Defendant testified: "I didn't open it or nothing, look at it or nothing, I just put it in the glove compartment"; that the package received was wrapped up in brown paper, a brown paper sack; that another boy came and got the package and then later asked defendant's brother to ride out to the west part of town in the car; that when this party got in the car he had a package and laid it in the seat and defendant didn't notice whether the boy took the package when he, later, left the car. Defendant admitted he was driving the 1951 Ford on the day of his arrest and had his brother's driver's license. Defendant further testified that, after he was arrested, the police officers found a package in the car; that they showed him the package; that this package was the same package he had had in his possession before August 15; that he recognized it as the same package; that they showed him what was in the package; that he had never seen what was in the package before; that he didn't know what was in the package, but when they showed it to him there was a hypodermic needle in it; and that the first time he had seen what was in the package was when the police opened it up.

Defendant said once that he did not remember seeing the package the officer found in the car; and that he did not see the newspapers, but he later said the officers found a brown package; and that he had put this package, wrapped in "sack paper, brown sack paper," in the glove compartment of the car on the 13th of August.

Defendant admitted that, when he was arrested on August 15, and the officers had showed him some instruments, he had said they belonged to his mother, but he was "in shock" when he told them that. At the trial he further testified that he had never in his whole life seen those instruments, "until the police opened them up," nor had he seen his brother's friend Jesse use them. He said the package opened by the officers was wrapped in brown paper and that he didn't see any envelope. It is unnecessary to review the evidence further.

■ Defendant's motion for a new trial contained only one assignment, to wit, that: "* * * the court erred in giving instruction number 1 in that the said instruction wholly failed to charge the jury *that it would be a valid defense to the crime charged in the information if the defendant intended to possess the package mentioned in evidence as a package belonging to another.*" (Italics ours.)

42 V.A.M.S. Supreme Court Rule 27.20 requires that a motion for a new trial shall set forth in detail and with particularity the specific grounds or causes therefor. The above assignment is a little ambiguous but, in effect, it says that Instruction No. 1 is erroneous because it did not charge the jury with reference to what appellant says is "a valid defense," to wit, with reference to an intention "to possess the package mentioned in evidence as a package belonging to another."

Section 195.020 RSMo [Laws 1957, pp. 679, 682] provides: "It is unlawful for any person * * * to possess any apparatus, device or instrument for the unauthorized use of narcotic drugs * * *."

Instruction No. 1 submitted a finding "that if you find and believe from the evidence beyond a reasonable doubt, that at the County of St. Louis and State of Missouri, on or about the 15th day of August, 1958, the defendant, Leonard Scott, knowingly, unlawfully and feloniously had in his possession any apparatus, device and instrument, to-wit: a hypodermic needle, eye dropper, bottle cap and cotton, as mentioned in the evidence for the unauthorized use of narcotic drugs, if you so find; then

you will find the defendant guilty of possession of an apparatus, device and instrument for the unauthorized use of narcotic drugs as charged in the Information; and unless you so find the facts to be, you will acquit the defendant. * * *

"The term 'possession' as used in this instruction, and in its legal sense means having the actual control, care and management of something to the exclusion of others, and not a mere passing control fleeting and shadowy in its nature. However, it is not necessary to establish ownership in order to establish possession. 'Feloniously' as that word is used in these instructions means wickedly and against the admonition of the law."

Appellant contends that Instruction No. 1 failed to cover "an essential element of the law of the case," the element of defendant's intention, since "the said instruction purports to cover the entire case but did not hypothesize the intention of the defendant in possessing the package in evidence as a defense to the crime charged."

Appellant argues that, "If the defendant did in fact possess the apparatus in evidence as a temporary sub-bailee of his brother *and did not intend to deliver them to another person for such use, he was not guilty of the crime charged* even though Section 195.020 RSMo 1957, does not postulate a mens rea as an element of the crime defined therein." (Italics ours.) Appellant also says that, "if the jury believed from the defendant's evidence that defendant possessed the package in evidence as a package that belonged to another person which was in an automobile belonging to a third person that defendant had borrowed and *if the jury believed that defendant did not intend to use the contents of the package himself or to deliver it to another for use, the defendant was not guilty of the crime charged.*" (Italics ours.)

Appellant concedes that "the State need not introduce evidence which tends to prove that the defendant intended to employ the

apparatus in evidence for the unauthorized use of narcotic drugs"; and that "the State can and does prove a prima facie case by the adduction of evidence that the defendant possessed apparatus which is capable of such use." Appellant, however, says that "where a defendant has adduced evidence which, if believed, will establish a valid legal defense to the crime defined in Section 195.020 R.S.Mo.1957, * * * the intention of the defendant is injected as an essential element of the law of the case upon which the jury must be charged under the provisions of Section 546.070(4) R.S. Mo.1949." Apparently, it is appellant's theory that defendant was obligated to bring forward evidence of innocent intent as an affirmative defense in order to exculpate himself, that he did so and that the court failed to instruct on his affirmative defense. Appellant insists that the evidence adduced in his behalf "was sufficient to establish facts, which if believed by the jury, would constitute an intention on his part which was *a valid legal defense* to the crime with which he was charged;" and that "the evidence on the part of defendant fairly tends to show that the package containing the apparatus in evidence belonged to another person and * * * was in his (defendant's) possession at the time he was arrested merely because it was fortuitously located in an automobile which he had borrowed from his brother."

Appellant cites State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 945, 103 A.L.R. 1301, wherein it was held that to justify a conviction for possessing burglar's tools, the tools must have been possessed with the general intent that they be used for burglarious purposes (that statute is materially different from the one here) and State v. Shelton, Mo.App., 248 S.W. 980, 981, where the court (in a case where defendant was charged with possessing a "worm" fit to be used for manufacturing liquor) said: "If defendant had the worm in his possession for the purpose of throwing it in the stream as he said he had been requested to do, and had no intention of using it in any way,

he should have been acquitted, and the fact that he knew what the worm was would not deprive him of that defense." On a second appeal of the Shelton case (266 S.W. 740) the court said: "As pointed out in the former opinion, possession of a worm, fit for the purpose of making intoxicating liquor, supplies the unlawful intent, which can only be overcome by defendant showing that the possession was not for a wrongful purpose. He had the benefit of that defense preserved in the instruction quoted, and the jury found the fact against him." Appellant also cites: State v. Roberts, 39 Mo.App. 47, 48, where the court said: "A pistol is a deadly weapon only when carried for use, and all that can be said is that, prima facie, the fact of its being carried is evidence that it is carried for use; but the defendant is at liberty to rebut this inference, by showing that he carried it as a mere article of merchandise, or, as in this case, as a mere messenger for transmission to a third party, without any intention to use it as a weapon." (And see State v. Hovis, 135 Mo.App. 544, 116 S.W. 6, where the weapon was intentionally carried concealed but with the further intention and purpose of shooting rabbits and, therefore, as a weapon. In such case such other intent or purpose constituted no defense.)

Appellant cites State v. Harris, Mo.Sup., 313 S.W.2d 664, but there the statute as to the offense of receiving stolen goods, Section 560.270 RSMo [Laws 1955, p. 510] had been amended to require a specific intent, to wit, "with intent to defraud." 313 S.W.2d 664, 670(6).

Under an assignment in the motion for a new trial that the court erred in giving Instruction No. 1, the appellant is now urging a different error, to wit, that the court erred in failing to "instruct the jury in writing upon all questions of law necessary for their guidance in returning their verdict * * " [Supreme Court Rule 26.02(6)], that is, in failing to instruct the jury on defendant's alleged defense "that defendant did not intend to use the contents of the package or

to deliver it to another for use." This is apparent since appellant cites Section 546.-070(4); State v. O'Kelley, Mo.Sup., 213 S.W.2d 963, 967(6) and State v. Gale, Mo. Sup., 322 S.W.2d 852, 856(4). The motion for a new trial did not assign error on the court's failure to instruct the jury upon all questions of law arising in the case. In other words, the assignment now presented was not presented and ruled in the trial court and, since the only error complained of in the motion for a new trial was error in the giving of Instruction No. 1, that is the only matter for our consideration upon this appeal. State v. Brown, Mo.Sup., 298 S.W.2d 351, 353(6); State v. Lord, Mo. Sup., 286 S.W.2d 737, 742.

■ Appellant, however, insists that the "incorporation of the word 'knowingly' in the main instruction did not require the jury to find that appellant entertained a criminal intent" and, therefore, the instruction is erroneous as stated in the motion for a new trial.

The court did not err in giving Instruction No. 1. It submitted a required finding which fully covered the matters presented by the record. The essence of the defense sought to be presented by defendant's testimony and his supporting evidence was *that defendant had no knowledge as to what the package contained*; that defendant in any event had no actual control, care and management of the package to the exclusion of others; and that any possession he had of the package was "a mere passing control fleeting and shadowy in its nature." These matters were fully covered by the Instruction submitted.

Defendant offered no evidence with reference to any alleged innocent intention with reference to possession of any apparatus, device and instrument for the unauthorized use of narcotic drugs. The issue sought to be presented is not before us on this record. The conclusion to be drawn from defendant's testimony was that he had no intention (innocent or criminal) with reference to any of the articles contained

in the package, since he had no knowledge of their existence or of the contents of the package. Any intention with reference to the package as a package is immaterial since he was not charged with the possession of a package as a package. The issue sought to be presented by defendant's evidence was not an affirmative defense, but a mere denial of the charge and tended to defeat the action on its merits. This appears from appellant's reply brief when he says: "While the record does not show it, the word 'knowingly' was inserted in Instruction Number 1, at appellant's request, to cover the defense that appellant did not know the nature of the contents of the package found in the car he was operating."

Instruction No. 1 submitted a finding that defendant "knowingly, unlawfully and feloniously had in his possession" *certain specifically mentioned articles and instruments* "for the unauthorized use of narcotic drugs." The evidence was sufficient to fully sustain the giving of the Instruction, as drawn. The finding of the jury under Instruction No. 1 necessarily disposed of defendant's defense because, under the Instruction, the jury could not find the defendant guilty, unless they found he knowingly and wrongfully had the exclusive possession and control over the specific articles for the unauthorized use of narcotic drugs. Under this Instruction the jury could not find defendant guilty unless he knew the contents of the package and wrongfully possessed such contents to the exclusion of others. The package as a mere package was necessarily excluded. The Instruction required a finding of knowledge and control of specific articles. See Cheffer v. Eagle Discount Stamp Co., 348 Mo. 1023, 156 S.W.2d 591, 594(8); 51 C.J.S. p. 463. The assignment is overruled.

■ We have further examined the record, as required by Supreme Court Rule 28.02, and find no prejudicial error respecting the sufficiency of the information, verdict, judgment and sentence. The record does not clearly show allocution, but the judgment and sentence is not invalid as the defendant was heard on his motion for new trial. State v. Drake, Mo.Sup., 298 S.W.2d 374, 378; State v. Keith, Mo.Sup., 241 S.W.2d 901.

The judgment is affirmed.

All concur.