250 S.W.2d 513 (1952)
MEADE
v.
KANSAS CITY PUBLIC SERVICE CO.
No. 42789.
Supreme Court of Missouri, Division No. 1.
July 14, 1952.
*514 Charles L. Carr, Kansas City, S. David Trusty, Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel, for appellant.
Clay C. Rogers, Lyman Field, Rogers, Field & Gentry, Kansas City, for respondent.
VAN OSDOL, Commissioner.
In this action for personal injuries sustained by plaintiff in a collision between defendant's bus on which plaintiff was riding as a passenger and defendant's streetcar at the intersection of Nineteenth Street and Grand Avenue in Kansas City plaintiff had verdict and judgment for $12,500 and defendant has appealed.
Defendant-appellant contends that Instruction No. 1 submitting plaintiff's case to the jury was erroneous; and that the trial court erred in the admission of evidence. Defendant-appellant further contends the verdict was excessive, and evidenced passion and prejudice on the part of the jury.
It will be unnecessary to make a statement of the circumstances of the collision, except to say the defendant's bus on which plaintiff was riding was forcibly struck by defendant's streetcar and plaintiff was injured.
Instruction No. 1, given by the trial court at plaintiff's instance, was as follows,
"The court instructs the jury that when the plaintiff * * * became a passenger upon the bus of the defendant * * *, then, under the law, it was the duty of the defendant * * * to exercise the highest degree of care in everything calculated to carry her safely, and in so doing the defendant was bound to use the utmost care and skill in the operation of its busses and street cars, and is liable and responsible for the slightest negligence, if any, which directly caused injuries, if any, to the plaintiff.
"Therefore, you are instructed that from the fact a collision occurred between the bus on which the plaintiff * * * was riding as a passenger, and a street car operated and controlled by the defendant * * * and from the fact that such a collision was an occurrence unusual and out of the ordinary course of events, then the jury may infer that the collision was caused by the failure of the defendant * * * to use and exercise the highest degree of care in operating its said bus and street car, and if you find and believe from all the evidence that said defendant did fail to use the highest degree of care in operating said bus and street car, then the defendant * * * was negligent, and if you find that such negligence of defendant * * *, if any, directly caused plaintiff to be injured, then your verdict should be in favor of the plaintiff."Defendant-appellant contends that Instruction No. 1 did not submit but assumed the ultimate fact of plaintiff's injury, which fact is one essential to recovery for negligence; and that the instruction did not submit but assumed the collision of the vehicles, an unusual occurrence, the basis of plaintiff's res ipsa loquitur submission. Defendant-appellant moreover insists the instruction erroneously defined the degree of care incumbent upon defendant, a carrier of passengers for hire, by the use of the unqualified language, "utmost care and skill," and in advising the jury the defendant was responsible for "the slightest negligence," citing Magrane v. St. Louis & S. R. Co., 183 Mo. 119, 81 S.W. 1158; Rothweiler v. St. Louis Public Service Co., 361 Mo. 259, 234 S.W.2d 552; and Murray v. De Luxe Motor Stages of Illinois, Mo.App., 133 S.W.2d 1074.
Although defendant by its answer put in issue the facts pleaded and essential to a recovery by plaintiff, there was no real or serious dispute upon the ultimate and essential factual issues in the trial of the instant case. The real issue was the amount of the recovery, that is, the amount which *515 would reasonably and justly compensate plaintiff for her injuries. The reading of the record discloses that it was conceded defendant's vehicles collided, and the verity of an inference of some kind of negligence of the defendant which the jury was authorized to draw from the collision, an unusual occurrence, was treated as if conceded. Defendant introduced no evidence tending to refute the permissible inference of defendant's negligence or to show the casualty was due to something beyond defendant's control. Defendant's counsel admitted in defendant's opening statement to the jury that plaintiff was a passenger on defendant's bus; that an accident occurred; and that plaintiff sustained "some injuries." Defendant's counsel made a formal admission during the trial that plaintiff was a passenger on defendant's bus "when it was run into * * * by a street car also owned and operated" by defendant. Defendant's counsel in argument expressed regret that the collision had occurred; stated that somebody made a mistake; and told the jury that "certainly" plaintiff "is entitled to be compensated."
Now assuming, without deciding, there were errors in plaintiff's Instruction No. 1, such errors could have been material or prejudicial only upon the jury's consideration of the issue of liability; and liability, as stated, was in fact or in effect conceded. So defendant could not have been prejudiced by error in instructions submitting the issue of liability, because the jury's verdict was for the right party. Magrane v. St. Louis & S. R. Co., supra; Hampe v. Versen, Mo.App., 32 S.W.2d 797. The appellate court may not reverse a judgment except upon error materially affecting the merits of the action. Section 512.160, subd. 2, RSMo 1949, V.A.M.S.
Here it may be further said there is an exception to the rule that, in a verdict directing instruction, all factual elements technically necessary or essential to a verdict must be submitted in the instruction for the consideration of the jury. Where, by admissions in the pleadings or admissions in the trial of a cause, or by evidence which corroborates the evidence of the opposing party, or where by examination of witnesses it is unmistakably apparent that certain facts are conceded, then, of course, such facts are no longer at issue and should not be required to be submitted in an instruction. State ex rel. Fourcade v. Shain, 342 Mo. 1190, 119 S.W.2d 788, and cases therein cited; particularly Davidson v. St. Louis Transit Co., 211 Mo. 320, 109 S.W. 583, in its application to the instant contention. See also Blew v. Atchison, T. & S. F. Ry. Co., Mo.Sup., 245 S.W.2d 31.
The contention of defendant-appellant relating to error in the admission of evidence is a more serious one, because the evidence introduced over defendant's objection was such as might ordinarily have had a prejudicial effect in the trial of the issue of damages. (Plaintiff, twelve years old when injured, was confined to her father's home for almost a year, and her father employed a teacher to come to the home and "tutor" plaintiff in studies plaintiff would have been taught at school had she sustained no injury.) Plaintiff's father, a witness for plaintiff, was asked by plaintiff's counsel, "And how many are there in your family?" Defendant's counsel objected on the ground of immateriality, which objection was overruled; and the witness answered, "I have eight children, five boys and three girls."
Since the case of Dayharsh v. Hannibal & St. J. R. Co., 103 Mo. 570, 15 S.W. 554, it has been generally said to be improper to inquire of a plaintiff relating to the number of persons comprising his family. State ex rel. Dick & Bros. Quincy Brewery Co. v. Ellison, 287 Mo. 139, 229 S.W. 1059; Holtz v. Daniel Hamm Drayage Co., 357 Mo. 538, 209 S.W.2d 883; Welch v. Thompson, 357 Mo. 703, 210 S.W.2d 79. This is on the theory that such an inquiry is ordinarily made only for the purpose of appealing to the sympathy of the jury. It has also been held that, since such an inquiry is usually incompetent for any purpose, a general objection is sufficient. State ex rel. Dick & Bros. Quincy Brewery Co. v. Ellison, supra.
In these cases the evidence held to have been erroneously admitted was evidence *516 showing the number of members of the families of the respective plaintiffs. However, we think such an interrogation of the father of plaintiff in the instant case was irrelevant and erroneous quite as if the case were one in which the father was plaintiff. The question was no doubt asked with the purpose of enlisting the sympathy of the jury. Defendant-appellant points out that it was shown in evidence, as parenthetically stated supra, that plaintiff's father had engaged the services of a tutor for plaintiff during the first school year after her injuries. Defendant-appellant urges that, by the shown fact the father was a "renter," the jury was given to understand that the father "was without means." It is said the jury could not "help but feel that although this suit was by the minor plaintiff, her parents would benefit in any recovery. It would be most natural for them to do so." We understand defendant-appellant is arguing that a jury, in assessing an award to plaintiff, would be "naturally" inclined to allow the expense of the tutor and of plaintiff's hospitalization and medical treatment; and especially would these expenses be "sympathetically" in the minds of the jurors and effect an enhancement of the award inasmuch as plaintiff's father was apparently a man of moderate means with the responsibilty of supporting a large family.
Although the trial court's ruling was erroneous, the evidence of the number of the father's children being irrelevant and improperly admitted, we are of the opinion that whatever prejudicial effect the error otherwise might have had was cured (1) by the showing, in defendant's cross-examination of the father, that plaintiff's parents also had an action pending upon a claim arising out of plaintiff's injury; and (2) by the trial court's given Instruction B, by which the jury was instructed that plaintiff was not entitled to recover "any expenses incurred for medical attention, hospitalization or expenses for tutoring her, if any, on account of her injuries * * *." In the basic case, Dayharsh v. Hannibal & St. J. R. Co., supra [103 Mo. 570, 15 S.W. 555], it is recognized that error here in question may be cured and rendered harmless by matters which transpire in the trial of the cause; and it will also be further noted that the only instruction given by the trial court on the measure of damages in the Dayharsh case not only did not cure the error, but "rather gave prominence" to the irrelevant testimony. The contention in the instant case is ruled against defendant-appellant.
Was the amount of the award, $12,500, excessive?
As stated, defendant's streetcar forcibly struck defendant's bus on which plaintiff was riding, and plaintiff was rendered unconscious. She "woke up" in an ambulance on the way to General Hospital where she spent the night. She was removed to Research Hospital the following day, but stayed for a short time only, there being no room there available. She remained at her home for two days and was then admitted to St. Joseph's Hospital where she was confined for twenty-one days. Upon being discharged from St. Joseph's Hospital, plaintiff remained in the home of her parents. She lay upon a day bed or couch in a down-stairs room of the Meade home for about five months. It was about a year after the accident before she was able to get up and go out of the house.
Plaintiff, prior to her injury, was a "good student," and has continued her high record in scholastic work since she was injured. She makes "E's and S's." However, she does not associate with others as she did before she was injured. She does not now engage in sports or play or attend social events as do girls of her age, and as she did before. She is reticent and morose and, except in scholastic work (in which she continues to excel), is generally unresponsive and unco-operative. Her attending physician testified that plaintiff sustained a concussion resulting in damage to the left frontal lobe of the brain, which the doctor explained has to do with the forming of judgment, and with personality and social attitudes. A neurologist, an expert witness for plaintiff, was of like opinion. The left frontal lobe is also one of the brain areas controlling the muscular movement of the right side of the body. The brain *517 condition is permanent, but as a "generalization" such condition may get better; and there is the probability the condition will not get worse. The doctors further explained that plaintiff suffered no demonstrable damage to the brain centers governing the power to learn, thus accounting for plaintiff's ability to continue her "better than average" record in school.
Plaintiff's nose was crushed and broken in the collision, but has been repaired by surgery so that the "air passage" is only fairly adequate; and by full-face view the nose is in correct alignment, although viewed in profile the nose has a slight "protuberancea residual deformity. The cartilages of plaintiff's right knee were injured. Her knee continues to be insecure and occasionally gives way. She has not made a normal general physical recovery. She is between seventeen and twenty pounds underweight, and "has a different complexion." Plaintiff suffered pain, and now continues to complain of pain in her right leg and knee and in her lower back. She experiences dizziness. She has severe headaches, during which there is blurred vision and a "ringing" in her ears. She does not rest well.
In this case the trial court has overruled defendant's motion for a new trial, and, in examining the contention of excessiveness of the award, we have stated and considered the evidence of the nature and extent of plaintiff's injury from a standpoint favorable to plaintiff.
Considered from a standpoint favorable to plaintiff, the evidence shows plaintiff suffered painful and permanent injuries. Plaintiff sustained permanent brain damage which has had a far-reaching effect upon her attitude toward others and upon the enjoyment of her present and future life in association with others. The brain injury is such as adversely affects the exercise of her judgment and social aptitudes which she could have otherwise utilized to the end of enabling the useful and happy application of her keen mind to the affairs of life, personal and social. In these important respects, she is not the same kind of a girl that she was before she was injured. She has also sustained a permanent injury rendering her right knee insecure or unstable. She continues to suffer aches and pains in her head, in her leg, and in her lower back. She also has residual scars or deformities on her leg, on the back of her hand, and on her left brow and nose, although it is not inferred these scars are very ugly or repulsive.
The plaintiff's injuries were apparently of a more grave and permanent nature than those of plaintiff in Roberts v. Carter, Mo.App., 234 S.W.2d 324, cited by defendant-appellant. Plaintiff in the Roberts case had no concussion and consequent damage to the brain. In the case of Venditti v. St. Louis Public Service Co., Mo.Sup., 240 S.W.2d 921, decided in 1951, the plaintiff, thirty-eight years old, was permanently affected by her injury to somewhat like extent as plaintiff herein. This court could not say that an award reduced by the trial court from $20,000 to $13,000 was yet excessive. The plaintiff, Vendetti, had lost wages and had incurred medical expense of approximately $4100. Yet, considering the youth of plaintiff herein, we believe we should say the award of $12,500 was reasonably comparable to the award of the thirty-eight-year-old plaintiff Venditti.
Having a regard for the factors to be considered in reviewing the question of excessiveness of an award, Young v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 192 S.W.2d 402, we believe the amount of the award in the instant case should not be held excessive.
The judgment should be affirmed.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.