Allen J. SMITH, Jr. (Plaintiff), Respondent,

v.

WABASH RAILROAD COMPANY, a Corporation (Defendant), Appellant.

No. 47601.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

Lee J. Placio, Jr., Charles P. Lippert, St. Louis, John L. Davidson, Jr., St. Louis, of counsel, for appellant.

Michael B. Gershenson, Frank Bild, St. Louis, for respondent.

BARRETT, Commissioner.

In this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the Wabash Railroad appeals from a verdict and judgment of $10,000 in favor of its former employee, Allen J. Smith, Jr. Allen, a clerk in the disbursements office, was injured when a sixty-five pound cardboard box, or boxes, of IBM cards fell from the top of a seven-foot stack as he reached to get one of the cartons. The evidence, admittedly, supports the charge of negligence, but because of the admission of certain evidence and the giving of instruction one the railroad contends that it is entitled to a new trial.

Instruction one directed a verdict upon a finding that while he was in the act of lifting and removing a box of IBM cards from the top of the seven-foot stack another stack of boxes of the same height toppled and a box or boxes fell upon Allen "and *if you further find and believe from the evidence* that prior to and at the time plaintiff was struck by the falling box, *if so, said boxes were stacked without supports, or braces, leaned, tilted and wobbled and were likely to topple over and fall upon persons handling them,* and if you further find and believe from the evidence that by the exercise of ordinary care, the defendant * * * knew or should have known of such condition in time thereafter to have taken steps to support or brace, or stack said boxes in such a manner that they were not likely to

topple over when being handled, but failed so to do *and was thereby negligent;* and if you further find and believe from the evidence that said negligence, if any, in whole or in part caused plaintiff to sustain injuries * * *."

The specific objection to this instruction is that it "assumed that the very act of negligence complained of by the plaintiff was negligence as a matter of law, and did not require such a finding by the jury." It is not claimed that there is no evidentiary support for the instruction, but the appellant "earnestly maintains that the manner in which these boxes were stacked was susceptible to varying views and that reasonable minds could differ on this point" and, therefore, it is said that this factual element should have been submitted to the jury, not assumed. At another point in its brief the appellant states that the instruction "assumed, without requiring the jury to find, that the manner in which the cartons were stacked constituted negligence," or "assumes that the condition of the boxes was negligent and merely submits to the jury the question of negligence in failing to correct the condition."

▆▆▆ The appellant's criticism of the instruction has been set forth in some detail because the objection ignores the fact that the gist of this action was failure to furnish a reasonably safe place to work, the evidentiary fact of which was the insecurely stacked boxes. It is not claimed that the instruction fails to submit or improperly submits the essence of the case, the breach of the defendant's basic duty to furnish a safe place to work, the objections are all to the submission of the evidence of the fact. It is of course not proper for a principal instruction to assume an essential controverted fact but, as indicated, there was an evidentiary basis for the plaintiff's hypothesis that to the knowledge of the railroad the boxes were stacked without braces and in such a manner that they were likely to topple and fall and thus the plaintiff's place of work was unsafe. At the behest of the defendant the court gave nine instructions but they were all cautionary or explanatory, there were no converse instructions or instructions submitting the defendant's evidence and claim that "the manner in which these boxes were stacked was susceptible to varying views," or, in short, that they were not carelessly stacked and that the furnished place to work was safe. In the cases relied on by the appellant the instructions assumed a duty, or per-emptorily directed a verdict, or failed to submit and require a finding that the hypothesized acts or conduct constituted "negligence." McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S.W.2d 693; McCullough v. St. Louis Public Service Co., Mo.App., 86 S.W.2d 334; DeVoto v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 66. Instruction one does not contain these particular vices, after hypothesizing the evidentiary facts relied on by the plaintiff the jury is required to find that the appellant "was thereby negligent" and that its negligence caused the injury. Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 923–926, 18 S.W.2d 408, 417–419,—a falling stack of boxes case. Certain facts are hypothesized, the defendant's knowledge and the likelihood of the boxes falling are submitted and as the italicized quotation illustrates the jury is required to find ("if you further find and believe from the evidence") that the railroad "was thereby negligent"—thus the determination of the existence of these facts as shown by the plaintiff's evidence and finally the conclusion of negligence is left to the jury and is not improperly assumed in the instruction. 88 C.J.S. Trial § 280, p. 753; Hulsey v. Tower Grove Quarry & Const. Co., 326 Mo. 194, 215–216, 30 S.W.2d 1018, 1029; Gimmarro v. Kansas City, 342 Mo. 428, 437, 116 S.W.2d 11, 15.

▆▆▆ The appellant asserts that there was "immaterial and irrelevant" testimony with respect to the plaintiff's family status, church activities, and character, that the evidence was inadmissible for any purpose and because of its admission the appellant was deprived of a fair trial and that this

court should therefore grant a new trial. But all of these objections must be considered in the context of the trial in which upon the principally litigated issue (whether the plaintiff in fact sustained an injury) there were two lay witnesses and two expert witnesses for the plaintiff and five expert witnesses for the defendant. For example, as to his "family status" it is urged that it was error to permit the plaintiff and his wife to testify "that he was the father of a two and a half year old daughter," but, of course, this claim must be considered in the context of the trial. Barefaced testimony as to one's family status, "You are the father of some seven children, I believe?" (Holtz v. Daniel Hamm Drayage Co., 357 Mo. 538, 209 S.W.2d 883, 885; Heibel v. Robison, Mo.App., 316 S.W.2d 238), may be irrelevant, particularly when the fact is adduced only for the obvious purpose and effect of unduly arousing the jury's sympathy and thus influencing its judgment on either liability or the amount of damages to be awarded. Even so, when such evidence has been erroneously admitted, there is always the further problem of "whether it is prejudicial to the other, so as to warrant or require the granting of a new trial or the reversal of a judgment." Annotation 59 A.L.R.2d 371, 373, 396–398; Meade v. Kansas City Public Service Co., Mo., 250 S.W.2d 513.

When the plaintiff's wife was first testifying she was asked to state "some of the things other than what you have told us; tell us of the things that he used to do that you had to do after the accident?" In partial answer she said, "Well, we have a little girl sixteen months—." Defense counsel objected "to that" and moved for a mistrial. The court immediately ruled, "Sustained." Defense counsel started to say something further, "This isn't—" and the court interrupted with "Sustained." Defense counsel did not ask that the statement be stricken or that the jury be instructed to disregard it, instead he moved for a mistrial. The court denied the motion for a mistrial, stating "I sustained the objection

to the answer." Mrs. Smith then testified to her husband's condition and actions before and after the accident, what he had done by way of household chores before his injury, moving furniture and mattresses and what he had been unable to do since the injury—in effect that he had not helped with household chores since the accident. It was at this point that there were these questions, answers and objections:

"Q. In connection with the caring of your child, prior to this occurrence had your husband assisted in caring for it? A. Well, he did—

"Counsel (Interrupting) I will object to that; I want the record to show my objection and I move for a mistrial, injecting into this case matters—

"The Court: (Interrupting) Overruled.

"Q. Did you both do it before? A. Yes, sir.

"Q. After this occurrence has he ever carried the child? A. Right now in recent months he has, but he never did, within a month or two after he was hurt; when he was sitting down he would put her on his lap."

Thus upon the principal issue litigated Mrs. Smith's testimony was not a barefaced announcement or wholly "irrelevant," in part it was explanatory. Hutchcraft v. Laclede Gaslight Co., Mo., 282 S.W. 38, 43. In connection with his wife's testimony with reference to his lifting the baby there was no instruction on the measure of damages giving prominence to that particular evidence by alluding to the plaintiff's "situation in life" and "to 'the extent to which he is disabled from making a support for himself *and family.*'" Dayharsh v. Hannibal & St. J. R. Co., 103 Mo. 570, 15 S.W. 554, 555. That the appellant is not entitled to a new trial because of Mrs. Smith's testimony concerning her husband's ability to lift their child will clearly appear in the further context of the trial and the appellant's objection

to the admission of testimony concerning the plaintiff's church activities and his "character."

Allen's other lay witness as to his activities before and after his injuries was his friend Phillip Hess. When Hess stated that they became acquainted in the New Apostolic Church defense counsel objected and asked for a mistrial "for the reason he is injecting elements in this lawsuit that are highly improper and highly objectionable." The witness, who was "councilor for the youth group at church," said that he saw Allen as often as four times a week at church, that he was one of the volunteers to cut grass, that he helped with tables and chairs at church social functions, was the pitcher on the softball team and engaged in other physical activities connected with church work and recreation. The witness said that since his injury Allen attends church but has not played softball or helped with the tables and chairs. It is now objected that "It was error to permit plaintiff's witness, a church councilor, to testify with respect to the plaintiff's participation in church services and other church activities, including testimony that he had become acquainted with plaintiff at church and that plaintiff attended church approximately four times a week." It is said that the evidence "could only be intended to establish the good character of the plaintiff, and the law is well-settled that evidence of character, in a civil action where character is not in issue, is inadmissible for any purpose."

In part these objections misconceive the purpose of the testimony. It is not claimed that the witness was not qualified to testify to Allen's physical activity before and after his injury or that his testimony was lacking in probative force. The inference the witness and the plaintiff would draw is that it was only incidental that these activities took place in connection with the church and, of course, how and where they became acquainted and the nature of the relationship accounted for Hess' opportunity to observe Allen's physical activities before and after his injury. Chapman v. Metropolitan Life Ins. Co., Mo.App., 132 S.W.2d 1096, 1099. In addition to this, however, Allen's church activities first came into the case without objection during his direct examination. In detailing the activities he had engaged in prior to his injury he said that he was a softball pitcher in "our church league" and that he was a basketball player "in the Baptist Church League," but since his injuries he could not play ball and was "director for athletics at the church." Furthermore, the subject of his church activities next arose when defense counsel sought to elicit the admission that after his injury from the falling boxes he had sprained his back while shoveling snow, "at home," counsel said. He was asked whether he had told his doctor that he was shoveling snow and his "back went out." In answer and explanation Allen said, "I told Dr. Parsons that I went to church to open it up so the boys could clean off the walk, and I was sweeping off the steps at church when I had the occurrence with my back." Subsequently, when the doctor was recalled to answer a hypothetical question, defense counsel objected that the question did not contain "all of the elements that are in proof" and insisted that it include "when the doctor said that he told him that he injured his back after moving some snow from his church." The testimony of Hess was relevant and competent for the main purpose offered and in the circumstances of this record, whether it showed good character or not, was not an improper injection of religious prejudice demanding the granting of a new trial.

The doctor in testifying to the history he had obtained before examining and treating Allen volunteered the information that "he is a very conscientious person, an overly conscientious person—." Defense counsel objected "to any description of the character of this man by the doctor" as immaterial and asked that the statement be stricken. Soon the doctor, purporting to state what his "findings" were, said, "He had a number of, I would say naive—unusual

ideas or fears about what might happen to his body—that is in part related to lack of understanding of the way in which the body functions; he is clear mentally;—he is a rather—I used the term over conscientious —over scrupulous is the word I would prefer to use—." Defense counsel objected to this statement as "irrelevant and highly prejudicial." Later on cross-examination as to whether Allen had told him that he had sprained his back shoveling snow the doctor referred to his notes and replied, "Yes, it does, counsel—because my handwriting— my handwritten notes, as well as my memory, refers to the incident, and the manner in which he said the words, 'I couldn't do anything but what I did do.' It refers to my comment about the scrupulousness of this person." It is now objected that the doctor's observations tended "to enhance the plaintiff's integrity," that evidence as to plaintiff's character was irrelevant and coming from an expert medical witness deprived the plaintiff of a fair trial. It is not necessary to say whether these testimonial declarations were intended as "character" evidence (they were not comparable in either purpose or effect to the testimony as to reputation in Keet-Roundtree Dry Goods Co. v. Hodges, 175 Mo.App. 484, 161 S.W. 862 and Wood v. General Insurance Co., 229 Mo.App. 296, 77 S.W.2d 167). It is not believed that these testimonial declarations were innocently or unwittingly given but whether they were manifestly inflammatory and deprived the defendant of a fair trial is a matter that can only be understood and considered in the further context of the principally litigated issue.

There is no claim that the $10,000 verdict is excessive (State ex rel. St. L.-S. F. Ry. Co. v. Cox, 329 Mo. 292, 46 S.W.2d 849) but, as stated, the principal issue litigated was whether or not the plaintiff sustained an injury. The plaintiff's proof, supported by the testimony of a chiropractor and the testimony of an eminent neuropsychiatrist attached to the staffs of several famous hospitals, was to the effect that Allen had sustained serious and permanent injury, "a herniation of the disc between the fifth lumbar and the first sacral segment; a so-called herniated nucleus pulposus." On the other hand, the defendant's proof, consisting of the testimony of five qualified and successful doctors including an equally eminent neurologist attached to equally famous institutions was to the effect that there were no objective symptoms of injury, that Allen had no disability ("I didn't think he had anything wrong with him"). One young assistant resident physician in a famous hospital made this entry in its records: "Primary final diagnosis: Compensation neurosis. Anxiety reaction. *Malingering*."

It is not necessary to detail and characterize the testimony of these opposing experts, it is sufficient to note in passing that they were equally glib if not always equally imaginative and that the manner of litigating this principally contested issue was but the logical culmination of the expert medical witness as a "part of the trial apparatus of a personal injury case." Kemeny v. Skorch, 22 Ill.App.2d 160, 171, 159 N.E.2d 489, 494. In the context of approximately three hundred pages of this type of medical testimony and in the circumstances of this record it is not demonstrable that the testimony complained of was an error "materially affecting the merits of the action" and demanding the granting of a new trial by this court. V.A.M.S., Sec. 512.160(2); 3 Am.Jur., Secs. 1026–1029, pp. 576–583; 1 Wigmore, Evidence, Sec. 21, p. 393; Chapman v. Metropolitan Life Ins. Co., supra.

In these circumstances and in the context of this record the incompletely articulated doctrine of "total" or "cumulative effect" of error is not applicable. V.A.M.S., Sec. 512.-160(2). Compare: Faught v. Washam, Mo., 329 S.W.2d 588; Myers v. Moffett, Mo., 312 S.W.2d 59, and Moore v. Shelly Motors, Mo.App., 225 S.W.2d 953.

Accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, P. J., EAGER and STORCK-MAN, JJ., and BROADDUS, Special Judge, concur.