Marlin L. SWINGER, Respondent,

v.

Lee Roy BELL and Louis Don Taylor, Appellants.

No. 49839.

Supreme Court of Missouri,

Division No. 2.

Dec. 9, 1963.

Dempster & Edwards, Sikeston, by Robert A. Dempster, Sikeston, for respondent.

Blanton & Blanton, Sikeston, for appellant-defendant, Lee Roy Bell.

Harold D. Jones, Bock & Jones, New Madrid, for appellant (defendant) Louis Don Taylor.

BARRETT, Commissioner.

The plaintiff, Marlin L. Swinger, was a guest in a station wagon driven by Louis Don Taylor when the station wagon was involved in a collision with an automobile driven by Lee Roy Bell. Swinger instituted this action against both Bell and Taylor to recover damages for personal injuries sustained in the collision. A jury, by a nine-man verdict, awarded Swinger $30,000 and both defendants have appealed from the final judgment. The appellant Taylor has briefed and argued seven main points and eleven subpoints while the appellant Bell has briefed four points, a dismaying twenty-two assignments of error in a comparatively simple and elemental negligence case. Bearing on the plaintiff's right to recover at all are the claims that for one reason or another Swinger failed to make a submissible case and that as a matter of law he was guilty of contributory negligence and therefore the appellants' motions for directed verdicts should have been sustained. In the event they are not entitled to directed verdicts, it is urged that because of certain erroneous instructions, the improper admission of certain evidence and the conduct of counsel in unfairly injecting liability insurance on voir dire they are entitled to a new trial and failing in these that there should be a substantial remittitur.

■ Among the preliminary matters and somewhat collateral to all other points is the claim that the court erred in refusing to declare a mistrial because, the appellants say, plaintiff's counsel in qualifying the jury unfairly and in bad faith introduced the subject of liability insurance. It is said that bad faith was shown by plaintiff's failure to "request the discharge" of five jurors and his failure to strike three who responded that they were policyholders in M. F. A. Insurance Company, the liability insurer of both defendants. The court is asked to "take a second look" at this problem, but upon this record there was no abuse of discretion in the trial court (Gray v. Williams, (Mo.App.) 289 S.W.2d 463) and the circumstances do not call for a reexamination of the established rules. There was the single, general question, addressed to the entire panel, "Now, gentlemen, I want to ask you if any of you gentlemen have a policy of insurance or are employed by or have any connection with the MFA

Mutual Insurance Company of Missouri." As indicated, five jurors responded that they were policyholders, there were "no employees" and no one indicated any other "connection." Then there was this follow-up question to which, apparently, there was no response: "Now, gentlemen, that fact, would it prejudice you one way or another in the trial of this lawsuit?" As stated, it is not necessary here to examine the rationale of the rule or to consider the question in detail, there was no persistent effort to improperly "prove" the unquestionable interest of M. F. A. Insurance Company (Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673), and in qualifying jurors "it is proper on the voir dire examination to ascertain whether any juror who has qualified generally is in any way, directly or indirectly, interested in such insurer or carries a like policy in some company, or any other fact or relation which, if known, would aid the parties to the suit in making a choice between the qualified jurors." Rytersky v. O'Brine, 335 Mo. 22, 27, 70 S.W.2d 538, 540; Annotation 4 A.L.R.2d 761, 792. The fact alone of being a policyholder, however, does not disqualify and the fact that policyholders were not stricken does not establish bad faith in plaintiff's asking the question. This subject was most recently considered in Bunch v. Crader, (Mo.App.) 369 S.W.2d 768. There as here one of the questions was "Would the fact that you are policyholders in the M. F. A. Insurance company cause you to be biased and prejudiced and prevent you from rendering a fair and——." And there one of the jurors was "an agent" for the insurance company. It was held that there was nothing to indicate bad faith and that there had been no abuse of discretion in permitting the inquiries.

■ In claiming that Swinger failed to make a submissible case the appellants have stated the facts as they might have been found rather than as the jury could and did find them. However, only so much of the testimony will be noted as is sufficient to illustrate the lack of merit in the claim

that verdicts should have been directed. The motor vehicles collided about one o'clock on the afternoon of February 2, 1961, at the approach to a bridge on blacktopped highway Y in Stoddard County. The bridge over the Wahite drainage ditch is 177 feet long and at both ends its approaches are elevated 9.2 feet. Bell did not intend to cross the bridge, traveling east he intended to turn left across the highway just before reaching the bridge to what he called a "spur" where dirt had been removed from the drainage ditch. Taylor was traveling west, he and Swinger returning to Cline's Island where Taylor had done some electrical wiring in the morning Taylor's station wagon crossed the bridge and collided with Bell's automobile as Bell, admittedly, "made a lefthand turn there," looked after his wife said "Watch out," and stopped with his Ford automobile north over the center line of the highway. He could not say just how much his automobile was over the center line but he "imagined" three or four feet would be "about right." He said, however, that he did not have the road blocked, "No, sir, I don't think it would have been blocked." As to what in the circumstances Taylor could have done he said, "Yes, sir, I think he could have went around me." Taylor says that as they rode along at a speed of 45 miles an hour and before he got to the bridge he saw Bell's automobile "a good long ways down the road," Swinger mentioned the drainage ditch and he looked in that direction. But as "I was going over the incline" Bell, 40 to 50 feet from the bridge, turned across the highway "his left front wheel almost off the blacktop." Taylor immediately applied his brakes and "skidded into him." He said however that all of Bell's automobile, "but the right rear wheel * * * maybe a foot of it," was over in his lane of travel but that the eastbound lane was open. There was no other traffic and he said that he could have gone around Bell's automobile but instead, he says, went for his brakes. He did not remember the conversation, says "I might have," but Swinger testified that while he was in the hospital Taylor 'on one of his

visits made this statement: "Mr. Taylor told me that it was his fault, that he could have missed the wreck. He could have missed Mr. Bell's car if he had tried not to stop. If he had just pulled over to the left, there was plenty of room. It was his fault; he was to blame for my broken leg; he was sorry."

This testimony, or the circumstances as the jury found them, directly refutes Taylor's assertions that under the "undisputed evidence" he could not have swerved "left with safety" or that at the "time he had to make a decision of what action to take" he "could not have for(e)seen whether defendant Bell would stop his Ford and if he should stop whether the greater part of it would be in the eastbound lane or the westbound lane." Not only does the noted testimony refute the assertions, factually it distinguishes them from Allen v. Hayen, (Mo.) 320 S.W.2d 441, and destroys any possible claim that a verdict should have been directed in Taylor's favor on Swinger's cause of action. It is not necessary to consider whether Taylor "was faced with a sudden emergency," the other reason mentioned in connection with directing a verdict. One of the cases relied on answers the claim: "The so-called emergency doctrine is not a defense, under which a motorist is exonerated simply by reason of the existence of an emergency." Rohde v. St. Louis Public Service Co., (Mo.) 249 S.W.2d 417, 420(1); Leek v. Dillard, (Mo.App.) 304 S.W.2d 60, 68.

It is asserted that Swinger failed to exercise due care for his own safety and was guilty of contributory negligence as a matter of law because, as appellant Bell puts it, "he orally directed his host driver's attention from the travel portion of the road upon which he was being conveyed, to a point North of the highway, at a time when the vehicle in which plaintiff was riding was in close proximity to a vehicle (Bell) in the process of making a left turn in front of the vehicle in which the plaintiff was riding." The difficulty, again, with this assignment is that it is based upon a view of the evidence favorable to the appellants rather than upon the circumstances as the jury could and did find them. It is not necessary to quote at length from the record to demonstrate the untenability of this claim, the plain implication of Taylor's testimony is that whatever may have been said or done with reference to the drainage ditch was long before he reached the bridge and had nothing to do with the collision. Swinger himself said that as they approached the Wahite ditch they had a conversation, "Yes, sir, I commented on the ditch. They had been cleaning the ditch off and I told Don that they had cleaned it off and he said they had been doing it for some time." On cross-examination he first said, "I just told him to look, that they had been cleaning the ditch off. Q. All right, sir, and he did look, didn't he? A. I don't know. I was looking north." Later he said, "I don't recall saying 'look.'" Obviously, in these circumstances Swinger may not be declared guilty of contributory negligence as a matter of law. Happy v. Blanton, (Mo.) 303 S.W.2d 633; Nydegger v. Mason, (Mo.) 315 S.W.2d 816.

This is not to say however that there was no basis whatever for a submission of contributory negligence on Swinger's part and he does not contend that there was no evidence upon which to hypothesize a finding of the fact. To support the finding appellants read from Swinger's deposition in which he had said, "I think I said 'Don, look, what they've done to that ditch' or something like that and he turned and looked at it and he said something about they had been working on it for some time but to recall the exact words we used, I don't know. * * * Well, we were both looking up that ditch and as soon as we looked back around, he hit the brake and the car was right in front of us." Swinger is not conclusively bound by his deposition (Hamilton v. Pat-

ton Creamery Co., 359 Mo. 526, 222 S.W. 2d 713) even though as he now tacitly concedes there was an evidentiary basis for the submission of his contributory negligence. And in separate instructions both Bell and Taylor submitted Swinger's contributory negligence upon the hypothesis, in so far as material here, "that the plaintiff directed the attention of defendant Taylor, the driver of the vehicle in which the plaintiff was riding, from the roadway to the area north of said roadway to the ditchbank, if you so find, and that as a direct result thereof defendant Taylor failed to keep a lookout ahead on said roadway * * * and if you further find that in directing defendant Taylor's attention from said roadway at said time and place, the plaintiff was negligent and that said negligence directly contributed to cause the collision referred to in the evidence."

Swinger hypothesized the negligence and liability of the appellants in separate instructions. Each submission was prefaced with the usual hypothesis "that the plaintiff (Swinger) was exercising ordinary care for his own safety." Against Bell the negligence submitted was the driving and operation of his automobile across the center line into the westbound lane on the wrong side of the road when the way was not clear of oncoming traffic and in front of Taylor's vehicle. His submission against Taylor was failure to swerve his station wagon to the left thereby avoiding the collision. Both instructions concluded with admonitions that a verdict should be found for the plaintiff "even though you may find that the (other) defendant * * * was also negligent in some respect, as set out in other instructions, directly contributing to cause said collision described in the evidence." Upon this appeal it is now urged that those instructions ignore or do not affirmatively negate Swinger's contributory negligence as pleaded, supported and submitted in the defendants' instructions and that because of this deficiency they are entitled to a new trial.

In this connection the appellant Taylor relies upon, of course, the "procedural" rule "that in cases where the court gives a defendant's instruction submitting his affirmative defense of contributory negligence, it is error to give a verdict-directing instruction for plaintiff which fails to refer to or negative his contributory negligence." Moore v. Ready Mixed Concrete Co., (Mo.) 329 S.W.2d 14, 24. But as stated, the plaintiff's instruction prefaced its hypothesis of Taylor's liability upon a finding "that the plaintiff was exercising ordinary care for his own safety" and in the absence of some complicating factor (Edwards v. Mellen, (Mo.) 366 S.W.2d 317, 321) that is a sufficient negation of contributory negligence to meet the requirements of the rule. Boll v. Spring Lake Park, Inc., (Mo.) 358 S.W.2d 859, 865; Taylor v. Hitt, (Mo.App.) 342 S.W.2d 489, 498.

And the appellant Taylor contends that instruction 2 which submitted his liability was erroneous in seven other respects, some of which are disposed of inferentially by what has been said with respect to liability and contributory negligence. For example the contention that there was insufficient substantial evidence to justify "failure to swerve" because by reason of certain distances and speeds Taylor "could not foresee whether Defendant Bell would stop most of his vehicle in the eastbound lane or the westbound lane." In view of the quotations from Taylor's testimony this argument is beside the point "if for no other reason than that it overlooks the defendant's own testimony that in the position in which she stopped her car, there was room for cars to pass her's either northbound or southbound." Nydegger v. Mason, 315 S.W.2d 1. c. 820. Other of these connected assignments are that the instruction did not require a finding that Taylor knew or should have known that a collision was likely unless precautionary measures were taken and there was no requirement that he could have swerved and avoided the collision. Again, factually

these contentions are answered by Taylor's own testimony and no case cited by him condemns an instruction because of its failure to contain these elements, certainly not in these circumstances. Litt v. Allen, (Mo. App.) 313 S.W.2d 183, 186–187. Swinger's submission against Taylor was of primary negligence and there was no place in this theory of the case for the doctrine that Taylor must have been able to swerve "with safety to himself and his passenger." Nydegger v. Mason, 315 S.W.2d 1. c. 821. It is not necessary to enter upon a discussion of "general negligence" and "specific negligence" (Thompson v. Gipson, (Mo.) 277 S.W.2d 527), it is sufficient to say that neither the Thompson case nor any other case cited by Taylor holds that "failure to exercise the highest degree of care" is a submission of negligence of any type, general or special. As employed in instruction 2 the phrase refers more likely to duty rather than to a specification of negligence. RSMo 1959, § 304.010(1), V.A.M.S. The appellant Bell makes a somewhat similar complaint against instruction 3 which defined and required both defendants to exercise "the highest degree of care." It is said that it was erroneous because "confusing" and in conflict with appellants' instructions 7 and 8 (contributory negligence) in which plaintiff was required to exercise "ordinary care." But, again, instruction 4 deals with duty and, of course, drivers of motor vehicles, here Bell and Taylor, are required to exercise the highest degree of care (Holmes v. McNeil, (356 Mo. 846) 204 S.W.2d 303) while their guest is only required to exercise ordinary care. Happy v. Blanton, (Mo.) 303 S.W.2d 633. "Highest degree of care" is a technical term and should be defined (Fantin v. L. W. Hays, Inc., (Mo.) 242 S.W.2d 509), in any event the instruction here did not have the effect of placing different degrees of care upon the appellants as operators of motor vehicles and as stated the respondent was not operating a motor vehicle. Young v. Anthony, (Mo.) 248 S.W.2d 864. In short, all of these particular complaints have been sifted but they do not demonstrate that in-

structions 2 and 4 were manifestly and prejudicially erroneous.

Further in connection with instructions, appellant Taylor contends that instruction 1, which hypothesized Bell's negligence to plaintiff, and instruction 7, which, as noted, hypothesized Swinger's contributory negligence to Bell, were prejudicially erroneous as to him. In instruction 1 the objection is to the phrase, extirpated from context, "also negligent in some respect" which it is asserted "modifies and does not refer to or incorporate" instruction 2 which directs a verdict against him (Taylor). It is said, again out of context, that Bell's instruction 7 refers to the negligence of Taylor "as set out in other instructions herein," submits an additional charge against him, failure to "keep a lookout," and is prejudicial "without requiring finding of such to be negligence." Perhaps it is sufficient to dispose of these rather complicated complaints to say that their mere assertion does not prove the fact, certainly the cases cited (Lawson v. Davidson, (Mo.) 344 S.W.2d 76; Schipper v. Brashear Truck Co., (Mo.) 132 S.W.2d 993, 125 A.L.R. 674 and Danner v. Weinreich, (Mo.) 323 S.W.2d 746) do not establish that either of the instructions, for the reasons asserted here, manifestly deprived the appellant Taylor of a fair trial.

■ Instruction 4 on the measure of damages listed for the jury's consideration five elements including "(3) For such permanent injuries, if any, as you may find and believe from the evidence plaintiff will suffer by reason and on account of the injuries, if any, sustained by him on the occasion in question" and "(4) For the loss of wages that plaintiff has sustained, if any, by reason and on account of the injuries, if any, sustained by him on the occasion in question." It is urged that the instruction directs the allowance of "double or multiple" compensation. It is argued here that loss of wages pertains to permanent injury, in fact that permanent injury and loss of wages "are in substance one and the same" and therefore their submission authorizes

"double damages for the same factor." This contention is based in part on the fact, as developed on his cross-examination, that for a month prior to the injury Swinger was unemployed. Nevertheless his testimony that as a dragline operator he earned five to six thousand dollars a year and had been unable to work for the one and one-half years preceding the trial stands undisputed, a distinction, possibly, in this case and the dicta in Murphy v. St. Louis Public Service Co., (362 Mo. 772) 244 S.W.2d 31. But aside from the testimony and factual support the test of improper duplication of damages "is whether the instruction would lead the jury to believe that an award *must be made* 'for respondent's injuries and then allow him an additional sum for *damages.*'" Wild v. Pitcairn, 347 Mo. 915, 926, 149 S.W.2d 800, 805; Kelly v. Kansas City Public Service Co., (Mo.) 335 S.W.2d 159, 165. The instruction here is a rescript of several instructions in other cases and while this type of submission carries certain hazards, as with impaired earning capacity and ability to work (Bone v. General Motors Corp., (Mo.) 322 S.W.2d 916, 71 A.L.R. 2d 361) undisputed loss of wages is a recoverable item, at least it is not necessarily included in permanent injury. Moss v. Mindlin's, Inc., (Mo.) 301 S.W.2d 761, 769.

■ Appellant Taylor complains of two other trial matters (a) plaintiff's testimony on direct examination "as to his family status" and (b) counsel's statement in argument that when Swinger's deposition was taken "he was in bed full of dope." As to the first of these, plaintiff had stated his age, residence, occupation, marital status and then there was the question "Have a family?" Counsel for Taylor objected to the question, the court sustained the objection, counsel asked that "it be stricken," the court said, "If there was an answer, it may be stricken." Counsel then said, "We prefer to move that on that ground there be a mistrial" and this motion was overruled. There was no answer to the question, the subject was not again referred to

and of course the mere question is not manifest error. Smith v. Wabash Railroad Co., (Mo.) 338 S.W.2d 16, 19; Meade v. Kansas City Public Service Co., (Mo.) 250 S.W.2d 513, 516; Annotation 59 A.L.R.2d 373, 396–398.

■ The other matter complained of appears from a mere fragment of the entire argument supplied in a supplement to the transcript. Perhaps space will be conserved to quote all that appears in the supplemental transcript, ignoring any relevant testimony:

"Mr. Dempster: * * * Now, Mr. Blanton and Mr. Jones make a lot of talk about these depositions. Now, they went to Mr. Swinger's home when he was in bed full of dope.

"Mr. Blanton: Your Honor, just a second. There is no testimony that fellow was full of dope or anything like it.

"Mr. Dempster: Medicine.

"Mr. Blanton: If he had been out of his mind or hadn't been able to take care of himself or know what the question was, Mr. Dempster, wouldn't have allowed it.

"The Court: The objection will be sustained with reference to the word 'dope' and the jury instructed to disregard it.

"Mr. Jones: Because of the unfairness of that type of argument we move for a mistrial.

"Mr. Blanton: Join the motion.

"Mr. Dempster: Full of medicine and pain tablets, and you heard these two lawyers, you heard how they (?) me, no telling what a sick man might say * * *."

The argument was not proper, the court promptly sustained objection to it, instructed the jury to disregard it, there was, evidently, no ruling on the motion to discharge the jury and no insistence on the motion and in any event the argument was not so

manifestly inflammatory as to be comparable to the entirely unsupported, persistently improper argument in Dunn v. Terminal Railroad Association of St. Louis, (Mo.) 285 S.W.2d 701.

■ And finally both appellants contend that the $30,000 verdict is excessive and should be reduced by remittitur. In this connection it must be noted in passing that neither the appellants nor the respondent have cited a single case with more than a tangential bearing on the resolution of this problem. These briefly are the facts as they bear on this assignment: Immediately after the collision Swinger was taken to Dr. Sarno in Morehouse. Dr. Sarno could see that his leg was "fractured badly," treated him for shock and referred him to St. Louis Jewish Hospital and Dr. Fox, an orthopedist. An examination by Dr. Fox revealed a cut over one eye and numerous bruises but the "thing of main concern was this very badly swollen right thigh." X-rays revealed "a very severely comminuted fracture beginning at the junction of the upper and middle third and extending down through the entire midportion of the sh(a)ft of the right femur." He was placed in "balanced traction," weights were attached to a stainless steel pin near the knee in an attempt to properly align the fractured bone. This procedure was not too successful and by May 31, after about 15 weeks, an insufficient amount of bone was forming and Dr. Fox came to the conclusion "that the patient was not going to unite this fracture" and it would have "to be reinforced by additional bone." Consequently, on May 31 most of the traction apparatus was removed, anaesthesia was administered and surgery was resorted to. The bones "were aligned and they were fastened in place" by two egger plates, stainless steel plates, and a number of, eight, stainless steel screws. Bone, "a number of segments," was removed from the "iliac crest," hipbone, and "laid in along the fracture where there was not a satisfactory union." The incision was closed and Swinger was placed in a plaster cast extending from the mid-ribs to the foot. On June 16, 1961, he was permitted to go home "in the cast with crutches." He had some resulting complications including the "not infrequent complication" of kidney stones. On September 28, 1961, he was readmitted to the hospital, the cast was removed, he was "measured and fitted for a brace" and by October 10 "we began getting him up with the brace and crutches."

The healing process "was well along the way" at time of trial but not good enough "without some support in the nature of a brace." The plates "will remain the rest of his life" and he will have "marked limitation of the motion of his knee joint." He may be able to discard his brace in a year or so but there is a permanent loss of motion in the knee, 30 to 40% limitation of motion, with the consequence that he will have a limp and will experience difficulty in walking up and down steps. Swinger is now 30 years old, there was an established loss of wages of five to six thousand dollars, doctors' bills of $1,500, a hospital bill of $3,561.00, in short, special damages of over $10,000. As indicated, precisely comparable cases of similar injuries and losses have not been cited and considering all the factors involved in the remittitur doctrine and its standard of uniformity it may not be said that the verdict of $30,000 is excessive. The following cases have been rather persuasive upon this issue, De Mariano v. St. Louis Public Service Co., (Mo.) 340 S.W. 2d 735; Scneder v. Wabash Railroad Co., (Mo.) 272 S.W.2d 198; Moss v. Mindlin's, Incorporated, supra.

For the indicated reasons, the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

STORCKMAN, P. J., and LEEDY, J., concur.

**38** ■ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

EAGER, J., concurs in separate opinion filed.

I merely wish to register my disapproval of the second question asked the panel on voir dire concerning insurance, namely: "Now, gentlemen, that fact, would it prejudice you one way or another in the trial of this lawsuit?" The question was meaningless to anyone who did not know that M.F.A. insurance was actually involved, and in any event it was entirely improper. I cannot find, however, that this alone constituted prejudicial error sufficient for reversal.

EAGER, Judge (concurring).