Mildred **MAHOWALD**, Respondent,

v.

Forrest W. **GARRISON**, Appellant.

No. 24255.

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1965.

Selden M. Jones, Sniezek, Jones & Fridkin, Kansas City, for appellant.

Philip C. Ehli, Nolan J. Hepburn, R. C. Moore, Kansas City, for respondent.

MAUGHMER, Commissioner.

The automobile in which plaintiff Mildred Mahowald was riding as a passenger was stopped for a red light when it was struck from the rear by an automobile operated by defendant Forrest W. Garrison. She sued to recover damages for alleged personal injuries. The trial resulted in a jury verdict and judgment in her favor for $7,500. Defendant's motion for new trial was overruled upon condition that plaintiff remit $2,500 of the judgment. Plaintiff filed her remittitur in that amount but defendant has, nevertheless, appealed. The appeal presents only two assignments of error. Defendant urges us to reverse and remand because he says (1) the existence of insurance was improperly brought before the jury and a mistrial should have been declared, and (2) the verdict was excessive and the result of bias and prejudice.

The accident occurred about 8:30 a. m. on November 4, 1961—a Saturday morning —at the intersection of Gillham Road and Linwood Boulevard, in Kansas City, Missouri. Gillham Road runs generally north and south. At the time of the accident it carried six lanes of traffic at its intersection with Linwood, where the traffic was regulated by stop and go signal lights. Plaintiff was occupying the right front seat of a 1951 DeSoto, which was being driven by her sister, Margaret Crosswhite. They were on the way to attend a wedding.

It was the testimony of plaintiff and her sister that they were proceeding north on Gillham and occupying the third or right center lane, and as they approached Linwood the light was red, so their vehicle was brought to a complete stop. Plaintiff said: "We were stopped just for a moment or so, and this—well, it was a violent blow, hit us from the rear". According to plaintiff her hat and her sister's hat were found in the back seat after the collision. Defendant came up to their car and asked if they were injured.

The defendant Forrest W. Garrison at the time was an assistant in the Traffic Safety Division of the Kansas City Police Department. He was driving an official but unmarked car, and was traveling directly behind plaintiff and in the same traffic lane. Mr. Garrison testified that as he approached the scene he observed a third automobile "switching lanes" and moving from right to left and back again. He said he watched this car to determine if he should stop it. He said that as he neared Linwood, this third vehicle was to his left and his "attention was directed away from the car ahead and traffic ahead". He declined to estimate his speed at the time of contact, but said he struck plaintiff's car in the rear and moved it forward about a car length. He asked plaintiff and her sister if they were injured. He said they told him "their necks hurt".

Mrs. Mahowald and her sister took a taxicab and went on to the wedding. However, they left before the ceremony was

completed. Again they called a cab and this time proceeded to the Doctor Clarence Coffey Clinic, located at 1224 East 12th Street, where both were employed. Plaintiff's employment there was as a receptionist with earnings of $100 per week. Dr. Coffey, an osteopath, was called and plaintiff complained to him at the time primarily of pain in her neck, but with some pain in the right shoulder and low back.

Plaintiff, who was 46 years of age at the time of the accident, continued her work as receptionist up to the date of trial, which commenced on November 2, 1964. She was paid her wages for the whole of the period although there was testimony that she was absent a total of thirty to forty-five working days. On November 17, thirteen days after the accident she traveled by airplane to Minneapolis, where she visited with her mother for nine days. She testified that her ability to perform household work had been impaired, that the grip in her right hand had weakened, that her hand and arm were numb, and said she now suffers and has suffered since the accident with headaches, nervousness and stiffness in her neck. She has taken medicines to relieve the pain. She declared that her health had previously been good.

Three physicians were called and testified on behalf of Mrs. Mahowald. Dr. Clarence Coffey, an osteopath and her employer, examined her a few hours after the occurrence. She complained to him of pain in the neck and right side. Dr. Coffey had rather extensive x-rays taken. He produced no medical records as to findings or treatment but said he had prescribed medication for her neurotension and ultrasonic treatments, which were administered by her sister.

Dr. William L. Doane, M. D., examined plaintiff in his office on October 16, 1964, at the request of her attorneys. He described the earlier x-rays and the ones taken under his supervision as negative but said he found limitation of motion in her neck, muscle spasm in the cervical area,

right side, and was of the opinion her condition could well have been caused by the 1961 automobile accident which she had described to him.

Dr. Irving A. Wien, M. D., first examined plaintiff on November 15, 1961. She was referred to him by Dr. Coffey, his close professional associate. Dr. Wien's findings included: tenderness along the back of the neck and back of the chest. He said he observed pain reflexes which resulted from flexion in these regions, and there was a limitation of motion in bending forward. The x-rays taken earlier by Dr. Coffey were examined by him and found to be essentially negative. Dr. Wien's diagnosis was "sprained neck, acute, whiplash type".

Plaintiff was never hospitalized as a result of this accident. The medical report of Dr. Wien is not in evidence but Dr. Coffey said Dr. Wien recommended immobilization, diathermy and "certain medicines". Mrs. Mahowald has never worn a neck brace or collar, nor did any doctor prescribe one. However, Dr. Coffey said he did on occasions "tape her shoulders".

Dr. Donald Kirk Piper, M. D., examined plaintiff on October 30, 1964, on behalf of defendant. He found no limitation of motion of the neck muscles, palpation produced no pain reflexes, there was no evidence of muscular wasting or weakness and the circulation was normal. His x-rays were negative.

Defendant on appeal says a new trial should have been granted because the verdict was excessive and the result of bias and prejudice. In his argument and in his brief the allegation of bias and prejudice, which it is charged resulted from improper references to liability insurance, is stressed.

■ It is true that the evidence here adduced does not show any severe injury or any major disability. Plaintiff has continued with her regular work at the office and in her home, although she says she has

experienced difficulty in doing so. There were no broken bones and no defects incurred which were revealed by x-rays. However, plaintiff, while seated relaxed in the front seat of the stopped automobile, was suddenly and without warning, hit from the rear by another automobile with such force as to push the automobile in which she was riding forward about one car length. Injury could easily have resulted. Plaintiff says she has suffered pain, impairment of motion and nervousness, together with disability and a lessening of her capability to work at both her home and the office. The supporting medical testimony indicates some injuries and some disability. Accepting plaintiff's evidence at its face value, which we must do, since the jury apparently did so, we must conclude that it will support a moderate verdict and judgment. We discussed this subject generally in See v. Kelly, Mo.App., 363 S.W.2d 213, 218, and stated: "As the courts have many times said but using different phraseology, there is no exact measuring stick by which the proper or maximum award which the evidence in a case will support, can be determined. Each case must stand on its own facts. The current purchasing power of the dollar must not be overlooked. The jury and the trial court are in a better position to measure the reasonableness of the award than is the appellate court, where it should not be reduced unless as a matter of law, the amount is more than the evidence will support". Citing cases. In this See case plaintiff suffered limitation of neck and arm motion and a nerve root irritation. A judgment of $7,500 was approved.

Under all of the circumstances prevailing in the case before us we shall not rule that the verdict is without sufficient evidentiary support or is excessive as a matter of law, so as to require reversal.

We next consider the charge that the verdict was the result of bias and prejudice in connection with appellant's other assignment that the jury was biased and prejudiced because counsel for plaintiff indulged in intentional and deliberate references and demonstrations for the purpose of bringing the existence of liability insurance improperly before the jury.

Defendant bases his complaint that the existence of liability insurance was erroneously injected into the case upon three trial occurrences. First, the usual inquiries of counsel (made out of the hearing of the jury) revealed that defendant was covered under a liability policy issued by the Tri-State Insurance Group of Tulsa, Oklahoma. Upon voir dire the prospective jurors were asked if any of them or any member of their immediate family had ever been a stockholder, employee or policyholder of that insurance company. This particular procedure has been followed and this particular question has been asked numerous times in many different lawsuits. It has never been ruled as constituting error. In fact, defendant concedes that such an inquiry, standing alone, is quite proper, but he asks us to consider it in connection with other insurance inquiries and references, and asserts that the cumulative effect resulted in bias and prejudice. Second, during the cross-examination of Dr. Doane, plaintiff's doctor, who examined her shortly before the trial and for the purpose of testifying, the following colloquy occurred:

"Q (By Mr. Jones, attorney for defendant) Doctor, you have examined persons such as Mrs. Mahowald who claims to be injured in an accident on many occasions, have you not, sir?

"A I have.

"Q And for many lawyers? A. That is correct, sir.

"Q Representing these injured people, isn't that right?

"A And for many insurance firms".

Defendant's counsel made no objection at the time to any of these answers and we are of the opinion that neither

answer was objectionable. We believe the last answer was responsive and was brought about by the inquiries. On this cross-examination of plaintiff's doctor, counsel for defendant, as he had every right to do, stressed and brought out that Dr. Doane had examined plaintiff at the request of her attorneys and that he expected to be paid by these same attorneys. Counsel then, and he was still within his rights, asked if the doctor had not examined many such plaintiffs on numerous occasions. The doctor answered simply "I have". Counsel persisted with "And for many lawyers?". The response again was: "That is correct, sir". The point was pressed for a third time by the question: "Representing these injured people, isn't that right?". This time the reply was: "And for many insurance firms". Cross-examination is a powerful and dangerous weapon and sometimes the most skillful tactician is nonplussed and occasionally unhorsed by it. Here the references to medical examinations made for insurance firms was a reasonable response to the cross-examination. Defendant is in no position to complain about it. Third, the fact that Dr. Doane had examined for insurance companies or clients as well as for plaintiffs was referred to on the redirect examination. Again we set out the record verbatim:

"Q (By Mr. Ehli, attorney for plaintiff) And, Doctor, do you examine not only for injured plaintiffs but also for insurance companies? A. I do.

MR. JONES: Just a minute. Your Honor, I object to that and ask the jury be discharged.

THE COURT: The objection will be overruled. You asked about the same thing and got the same answer on cross-examination.

MR. JONES: All right. I want to preserve it and ask the Court to first instruct the jury to disregard counsel's question.

THE COURT: The motion is denied since you opened up the subject yourself".

We agree with the rulings of the Court. Defendant cannot successfully predicate error on this brief reference to insurance when the subject was first opened up by his own inquiries. Defendant here on cross-examination sought to discredit or at least dilute the credit of Dr. Doane as a witness by implying that he was a regular examiner and witness for allegedly injured plaintiffs in damage suits. Under such circumstances, redirect examination may be used to explain or clarify such implication and the extent or scope of such rebuttal inquiry rests largely in the discretion of the trial court.

The opinion in Couch v. St. Louis Public Service Co., Mo.App., 173 S.W.2d 617, 623, 624, discusses the matter this way:

"The ordinary function of redirect examination is to afford a witness an opportunity to explain or avoid the consequences of new matter brought out on his cross-examination, and to rebut the discrediting effect of damaging statements or admissions elicited from him. City of St. Louis v. Worthington, 331 Mo. 182, 52 S.W.2d 1003; State ex rel. [State Highway Comm.] v. Bengal, Mo.App., 124 S.W.2d 687. The scope and extent to which redirect examination shall be permitted to go rests largely in the sound discretion of the trial court (State ex rel. [State Highway Comm.] v. Bengal, supra); and where the one party, on cross-examination of a witness, opens up a line of inquiry which is designed to discredit the witness in the eyes of the jury, the courts go very far, as the reported cases show, in permitting the other party, on redirect examination, to bring out those aspects of the matter which are favorable to the witness, even though, without the foundation afforded by the cross-examination, the

evidence thus brought out would be wholly unjustifiable".

Appellant seeks to buttress his position that insurance was improperly injected into the case in the presence of the jury by charging that "Counsel, when he asked about insurance, * * * with his hand singled it directly toward me"; that counsel used improper "inflection of voice" and bad faith motions or movements. Of course, the record itself does not reveal these alleged improprieties. Appellate transcripts do not include sound recordings, motion pictures or television coverage. However, the trial court did observe these alleged instances of misbehavior and in its discretion ruled there was no reversible error. Besides, gestures, motions and voice inflections are generally regarded as part of a lawyer's trial technique, which he is privileged to use almost as he sees fit, subject only to proper courtroom decorum.

We shall discuss some of the cases cited by appellant. In Murphy v. Graves, Mo., 294 S.W.2d 29, defendant, out of the presence of the jury, denied the existence of liability insurance. Nevertheless, counsel for plaintiff, without any showing that there was insurance, made the usual insurance type of inquiries on the voir dire examination. For this reason and because of highly improper juror conduct, a judgment for plaintiff was reversed and remanded. The opinion is authority for the proposition that where bias and prejudice is shown, a remittitur will not necessarily cure the impropriety since a litigant is in any event entitled to a fair trial and a trial where bias and prejudice is not shown to have existed. Those facts do not fit our case where there is no suggestion or showing of juror misconduct revealing a preconceived opinion of liability on the juror's part.

In Crapson v. United Chatauqua Co., Mo. App., 27 S.W.2d 722, defendant admitted liability. Plaintiff attempted to show by reciting a conversation with defendant that defendant was covered by liability insurance. There the existence of insurance was shown by plaintiff and in a case where liability was admitted. The insurance reference was clearly for the sole purpose of inoculating the jurors with whatever latent bias and prejudice they might have against corporations, particularly insurance companies. This case is hardly in point.

This court sent the case of Moore v. Shelly Motors, Inc., 225 S.W.2d 953, back for retrial where, as stated in the syllabus, the record "was replete with accumulation of prejudicial comments, questions, insinuations and accusations on part of plaintiff's counsel". It is quite different from the case before us.

■ In our case the trial court ruled and we agree that the references to insurance on (a) voir dire, (b) cross-examination of Dr. Doane and (c) redirect examination of Dr. Doane, were proper. This being so, the question of mistrial did not arise. We find no authority or suggestion in any opinion that where the testimony complained about was ruled properly admissible, nevertheless, the case should be remanded because of the probable prejudice injected thereby. Whether bias and prejudice arose from plaintiff counsel's inflection or gestures is a question for the trial court to determine. McCaffery v. St. Louis Public Service Co., Mo., en Banc., 363 Mo. 545, 252 S.W.2d 361, 367. An appellate court cannot hear the inflection, see the motions or observe and estimate the effect on the jury.

Plaintiff's counsel here mentioned or brought about mention of insurance twice. Once on voir dire and by proper inquiry. In fact defendant suggests no impropriety in connection with the questions propounded on voir dire. Secondly, plaintiff's counsel in effect once on redirect examination repeated an inquiry which had been made previously on cross-examination by defendant. This, counsel had a right to do, since defendant had opened this particular gate. The insurance reference, collaterally revealed first by defendant's inquiry, was not

persistently or unduly pursued by plaintiff. If bias and prejudice resulted, which we doubt, and which the trial court apparently doubted, it was a risk incurred and assumed by defendant's questions even though possibly an unexpected and certainly an unwanted answer was obtained.

We rule against defendant on both his assignments of error. No other suggestions of error are made.

The judgment is affirmed.

BROADDUS, Special Commissioner, and SPERRY, C., concur.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

CROSS, P. J., and HOWARD, J., concur.

BLAIR, J., not participating.