Genevieve **STEELE**, Plaintiff-Respondent,

v.

John **YACOVELLI**, Defendant-Appellant,

and

Lucille Williamson, Defendant.

No. 32673.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1967.

Leritz & Leritz, St. Louis, for defendant.

Willson, Cunningham & McClellan, St. Louis, Dearing, Richeson, Weier & Roberts, Hillsboro, for defendant-appellant.

Thurman, Nixon, Smith & Howald, Hillsboro, for plaintiff-respondent.

DOERNER, Commissioner.

Plaintiff brought this action for damages for personal injuries claimed to have been received by her as a guest in an automobile operated by defendant Williamson when it collided with a car driven by defendant Yacovelli. Trial to a jury resulted in a verdict and judgment in favor of plaintiff and against defendant Yacovelli for $7500, and in favor of defendant Williamson. Defendant Yacovelli alone appeals.

The collision occurred about 11:00 A.M. on January 6, 1965 on U.S. Highway 67 in Jefferson County, at a point approximately eight-tenths of a mile north of the intersection of Route CC and Highway 67. At that place Highway 67 is a divided highway with two north-bound lanes to the east of the grass median, and two south-bound lanes to the west. The north and south-bound lanes are connected by a chat or gravel cross-over which extends across the median. The weather was sunny and the concrete pavement was dry. Prior to the collision both vehicles involved were proceeding northwardly in the outer lane of Highway 67, that driven by defendant Yacovelli preceding the car driven by defendant Williamson. Mrs. Williamson decided to pass Yacovelli's car and to that end pulled into the inner north-bound lane, blew her horn, and accelerated. As she neared Yacovelli's automobile he suddenly turned to his left or west from the outer lane, across the path of Mrs. Williamson's vehicle, intending to enter the cross-over. Mrs. Williamson blew her horn, applied her brakes hard, and pulled slightly to her left but was unable to stop in time to avoid the collision. The right front of her car struck the left rear door of Yacovelli's automobile. Plaintiff testified she was thrown in and about Mrs. Williamson's car.

Defendant Yacovelli's initial complaint concerns the giving of Instruction No. 4. By that instruction, plaintiff's only submission as to defendant Williamson, the jury was told that its verdict must be for plaintiff and against Mrs. Williamson if it believed that she failed to sound her horn before starting to pass Yacovelli's automobile, that she was thereby negligent, and that such negligence directly combined with the acts of Yacovelli to cause damage to plaintiff. (MAI 17.01, 17.07, 19.01) Defendant points out, and the record confirms, that there was no evidence to support the submission that Mrs. Williamson had failed to sound her horn before starting to pass Yacovelli, and maintains that the court erred in giving Instruction No. 4. He recognizes that the error was as to defendant Williamson and tacitly concedes that the long-established rule has been that one defendant cannot complain of error committed against a co-defendant. Dean v. Young, Mo., 396 S.W.2d 549; Cheffer v. Eagle Discount Stamp Co., 348 Mo. 1023, 156 S.W.2d 591. But defendant advances the novel contention that MAI has abrogated that rule, and that under MAI the giving of any instruction not supported by the evidence requires a reversal, even though the error is committed against a co-defendant. In support of his argument defendant points to the Committee's comment under Section 1.02, page 7, MAI, that, "The Committee believes that the jury should not be instructed on a theory of recovery or defense not supported by the evidence and that any such submission, whether in the conjunctive or disjunctive, should be reversible error. * * *" That comment may be applicable when the appellant was prejudiced by the instruction given but it obviously has no application where the erroneous instruction is submitted against a co-defendant and the defendant was not prejudiced thereby. For while Civil Rule 70.01(c), V.A.M.R., provides that the giving of an instruction in violation of the provisions of that rule shall constitute error, it also provides that the prejudicial effect of such error must be judicially determined. And by § 512.160, par. 2, RSMo 1959, V.A.M.S. and Civil Rule 83.13 (b), V.A.M.R., an appellate court is forbidden to reverse any judgment unless it believes that error was committed by the trial court against the appellant which materially affected the merits of the action.

As noted in Dean v. Young, Mo., 396 S.W.2d 549, 558, there is an exception (or a corollary) to the foregoing rule to the effect that if the error committed as to one defendant is prejudicial to the rights of the co-defendant then the co-defendant may justifiably complain. See State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 S.W.2d 836 and Biggs v. Crosswhite, 240 Mo.App. 1171, 225 S.W.2d 514. Defendant seeks to bring himself within the ambit of that exception by contending that by giving Instruction No. 4 when it was unsupported by the evidence, "* * * the issue of defendant Williamson's negligence was effectively removed from the case and the jury could not give any consideration to defendant Yacovelli's position that Williamsons (sic) actions caused or played a part in causing plaintiff's injuries." Defendant also complains that during his closing argument he was prevented from arguing what he terms, "* * * his theory of causation * * *" (that Mrs. Williamson failed to swerve to the right), when the court sustained her objection that plaintiff had not submitted such a charge of negligence against her. As plaintiff points out, defendant's reference in his argument to "* * * caused or played a part * * *" reveals a failure on defendant's part to differentiate between sole cause and concurring cause. If defendant had undertaken to establish a sole cause defense and his attempt to do so was prevented or prejudiced by the giving of Instruction No. 4 or the sustaining of the objection to his argument then, of course, the court erred. On the other hand, if defendant did not raise a sole cause defense but was merely attempting to fasten concurring negligence on Mrs. Williamson, on a theory other than

that submitted by plaintiff, for the purpose of obtaining a joint verdict and judgment, then defendant has no valid ground for a new trial. Duboise v. Railway Express Agency, Inc., Mo., 409 S.W.2d 108; Phegley v. Graham, Mo., 215 S.W.2d 499.

The fact is that at no time during the trial did the defendant claim that the negligence of Mrs. Williamson was the sole cause of the accident. On the contrary, as the record abundantly demonstrates, throughout the entire case defendant admitted that he had been negligent but contended that Mrs. Williamson's negligence was a concurring cause of the collision. Thus, in chambers, before the selection of the jury began, counsel for defendant Yacovelli stated:

"There is one other matter. Defendant Yacovelli will admit now, and will cover in his opening statement, that his conduct at the time of this accident was negligence, thus eliminating the need of demonstrating all of the factors leading up to the accident. I want it understood that we are not alleging, admitting this to be the sole cause, but we are going to contend that there is concurrent negligence on behalf of Mr. Leritz' client. We are admitting Mr. Yacovelli's conduct was negligent. * * *"

In his opening statement counsel told the jury:

"Quite frankly, Mr. Yacovelli will acknowledge that he should have seen this automobile before he made this turn. In not seeing this vehicle, because it must have been there, he was negligent. That particular issue, whether Mr. Yacovelli was or was not negligent, is not in issue here. The evidence that—" (At this point the court denied plaintiff's request that the jury be instructed that counsel for the first time was stating the defendant's position.)

*    *    *    *    *    *

"The evidence that Mr. Yacovelli will present will not be in the way of a defense as to his negligence, because he should have seen these people. * * * If the evidence demonstrates to you that Mrs. Williamson could have avoided this collision, then we will ask on behalf of Mr. Yacovelli that you share the blame for this collision and share it between Mr. Yacovelli and Mrs. Williamson. * * *

And in his closing argument to the jury counsel stated:

"He (Yacovelli) said then and there, it was my fault, and it was. He had no right to turn from here to here unless the way was clear. Everybody agrees with that. He looked and one of those unexplicable things, he didn't see. It was obviously there. It has been suggested to you that we were going to try to drag Mrs. Williamson in, I believe were the words used. I submitted to you Mr. Yacovelli should be held responsible. We submit that Mrs. Williamson had a considerable length of time in which to react after Mr. Yacovelli started this. She needed to swerve to the right and come down this lane to avoid the accident."

■ Plaintiff had the right, in the first instance, to decide whether to join Mrs. Williamson as a defendant, and having elected to do so, also had the right to choose the theory of negligence she wished to submit against that defendant. And when defendant Yacovelli's counsel, in an obvious effort to obtain a joint verdict and judgment, attempted to tell the jury that they could find against Mrs. Williamson upon a different theory advocated by him and Mrs. Williamson objected, the court's action in sustaining Mrs. Williamson's objection was entirely proper. LaMantia v. Bobmeyer, Mo.App., 382 S.W.2d 455.

■ During cross-examination of defendant Williamson by defendant Yacovelli she was asked, "Had you and Mrs. Steele on occasion compared notes about your arthritis before this accident?" Plaintiff's

objection to the question was sustained, whereupon defendant Yacovelli made an offer of proof that prior to the accident plaintiff had complained to Mrs. Williamson about discomfort due to arthritis in the general area of her back. Defendant asserts that such testimony should have been admitted as an admission against interest and that the court erred in excluding it. We note in passing that plaintiff made no claim that her back had been injured or aggravated as a result of the accident and that defendant Yacovelli's medical expert, Dr. Louis A. Reuter, testified that the X-rays he took of plaintiff's back vertebrae did not show anything abnormal or out of the ordinary with her back. In any event the evidence excluded was merely cumulative, for on direct examination plaintiff testified that following the birth of her son, almost nine years prior to the accident, she had trouble with her back below her waist; and on cross-examination by defendant Yacovelli the following occurred:

"MR. ROBERTS (counsel for Yacovelli): Just one more question. Did you ever have any problem with arthritis before this accident?

"A I had this birth injury I thought might be, but it wasn't.

"Q Did you at one time think it was?

"A In the lower spine, but it wasn't.

"Q When you and Mrs. Williamson used to commiserate together about arthritis, that is what you had in mind?

"A. Yes, sir.

"MR. ROBERTS: That's all."

Of course, the exclusion of evidence is harmless where it is merely cumulative and the fact has been established by other evidence. Boland v. Jando, Mo., 395 S.W.2d 206; Boring v. Kansas City Life Insurance Co., Mo., 274 S.W.2d 233.

Defendant's final point is that the verdict for $7500 is excessive and requires a remittitur of at least $2500. At the time of the collision plaintiff was 50 years of age and in good health except for diabetes which was under control. She led an active life both in her home and in community affairs, doing her own housework, sewing, gardening, painting, helping in various functions of her church, the Amvets, the V.F.W. and serving as a den mother of a Cub Scout Den. She was generally shaken up and received various bruises or contusions about her head and body but the primary injury was a cervical sprain which caused pain and stiffness to the lower part of her neck and a numb feeling going down her right arm. She was given medication for the pain and to relax the muscles, underwent traction treatments, and for two months was required to wear a cervical collar both day and night. The contusions disappeared in time, as did the numbness in her arm, and the pain in her neck subsided to some extent but plaintiff testified that she was never entirely without pain, that it varied in intensity, and that when at times it became severe she took pain tablets, wore her neck brace, applied heat, and laid down. She also related that she was unable to participate in the numerous community activities she had enjoyed, and that her ability to perform her gardening, sewing, and household duties had been impaired. Dr. Rifkin, her treating physician, expressed the opinion that plaintiff's cervical sprain had reached a chronic phase, that the healing had reached the maximum that would be attained, and that she would permanently continue to have pain and discomfort in her neck and will be limited in the range of motion in her neck.

In support of his contention that the judgment should be reduced defendant cites Salzwedel v. Vassil, Mo.App., 351 S.W.2d 829 and Mahowald v. Garrison, Mo. App., 397 S.W.2d 713. A careful study of the facts in those cases leads us to believe that under the doctrine of uniformity they tend to support rather than undermine the judgment in this case. For example, while in the first case Mrs. Salzwedel sustained a whiplash injury to her neck, she was not

required to wear a cervical collar or to undergo traction, as did plaintiff in the instant case, yet the appellate court approved a judgment for $6,000. The same observation is true of Mahowald v. Garrison, supra, and in addition the injured plaintiff was in the main able to continue her employment and household duties. There the verdict and judgment for $7500 was allowed to stand. In defense of the judgment plaintiff cites Bullock v. Sklar, Mo. App., 349 S.W.2d 381, decided by this court, where a judgment for $10,000 was approved, and Stephens v. Guffey, Mo., 409 S.W.2d 62, where a judgment of $19,670 for personal injuries was upheld. However, in our view the injuries in both those cases were more severe than that suffered by this plaintiff, and special damages were incurred in each of them.

There is no precise formula for gauging whether a verdict is excessive. Each case depends on its own particular facts. Goodman v. Missouri Pacific R.R. Co., Mo., 312 S.W.2d 42, 49. Various factors, such as the nature and extent of the injuries and losses, plaintiff's age and diminished earning capacity, if any, the changing economic factors and the amount awarded in cases similar or of fairly comparable injuries, must be given consideration. Stephens v. Guffey, Mo., 409 S.W.2d 62, 70. But the ultimate test is what will fairly and reasonably compensate the plaintiff for his injuries. Brown v. Payne, Mo., 264 S.W.2d 341; Pitt v. Kansas City Public Service Co., Mo., 272 S.W.2d 193. As was observed in Donahoo v. Illinois Terminal Railroad Co., Mo., 300 S.W.2d 461, 469: " * * * And this court has also said many times that it must be kept in mind that the question of the amount of damages is primarily for the jury. Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674, 681." Taking into account the factors required to be considered, the cases cited by both parties as well as others developed by our own research, we have come to the conclusion that these criteria negative a finding of excessiveness in this case.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.